**Adeline GRISOM et al., Plaintiffs,**

v.

**Lee F. LOGAN et al., Defendants.**

**Civ. No. 66–413–DWW.**

United States District Court,
C. D. California.

Oct. 20, 1971.

Stewart, Finkel & Manes, Los Angeles, Cal., for plaintiffs; Hugh R. Manes, Los Angeles, Cal., of counsel.

Roger Arnebergh, City Atty., Los Angeles, Cal., for defendants; George J. Franscell, Asst. City Atty., and Lowell M. Ramseyer, Deputy City Atty., of counsel.

## OPINION

MacMAHON, District Judge.[1]

Plaintiffs move for leave to appeal in forma pauperis from a judgment in favor of the defendants entered upon a jury verdict in this action based on the Civil Rights Act, 42 U.S.C. §§ 1981, 1983, 1985 and 1986.

The three original claims asserted stem from the fatal shooting of eighteen-year old John Grisom by Los Angeles policemen in the spring of 1965. Plaintiffs are all heirs of John Grisom, and defendants are five police officers involved either in the shooting or the investigation of it.

The first claim was two-pronged seeking to recover damages for the wrongful death of John Grisom, alleging deprivation of his constitutional rights by defendants and also alleging a conspiracy to deprive plaintiffs of their rights as heirs to recover for the wrongful death. The claim for wrongful death was submitted to the jury which returned a verdict in favor of all defendants. The claim for conspiracy was dismissed by the court at the conclusion of the evidence.

The second claim, brought by plaintiff Andre Grisom, decedent's infant son, through his mother and guardian Barbara Tillis Henderson, sought to recover damages for violation of the infant's rights, alleging that the infant was wrongfully shot and injured on the night in question. This claim was also submitted to the jury.

The third claim, brought by plaintiff Adeline Grisom, mother of the decedent, sought to recover damages for deprivation of her civil rights by the defendants, alleging that they falsified testimony and suppressed evidence in order to cause Mrs. Grisom's arrest and prosecution for perjury at the inquest into her son's death. This claim was dismissed by the court at the conclusion of the plaintiffs' case.

Plaintiffs now move for leave to appeal in forma pauperis under Rule 24 of the Federal Rules of Appellate Procedure.

In order that the issues raised on appeal may be fully understood, it is necessary to review the events that led to the original claims. The incidents occurred on the night of April 10, 1965. At approximately 9:00 P.M., Adeline Grisom went to a neighbor's house to telephone the police. Mrs. Grisom told the police that her son, John, was acting strangely, and she requested their help in handling him. She said that he had grabbed the telephone from her as she tried to make a call in her own house. A short time later, Mrs. Grisom called the police again and told them that she was afraid to go back into her own house because her son had a gun.

As Mrs. Grisom waited on the street for help, she spotted the car driven by defendants Logan and Dotson, who were answering another call in the area. She flagged the police car down and told the officers about her son. There was dispute at trial about whether Mrs. Grisom told the officers that her son had a gun. The police said she did, but plaintiff claimed that she had merely told them that her son had "bought" a gun.

Officers Logan and Dotson accompanied Mrs. Grisom into the house, where they found John Grisom sitting on a sofa with his infant son in his arms. Logan said that as they talked he caught a glimpse of a gun the decedent was holding concealed under the baby's blanket. Asked if he had a gun, Grisom replied: "You don't know what I have." Plaintiffs admitted that decedent gave that answer but insisted that there was no blanket and no gun. The decedent's mother and brother said that they had seen the weapon tucked away in another room a short time earlier. Both admit-

---

1. Of the Southern District of New York, sitting by designation.

ted, however, that they did not so inform the police so as to allay their fears.

The officers managed to persuade Grisom, still holding his son, to accompany them into the yard in front of the house. There, Logan radioed for help, and the call was answered by defendants Simpson and McGuine. Logan testified that at one point he attempted to lunge and grab Grisom but missed and fell. As he fell, the decedent turned menacingly toward him and raised the hand holding the gun. Certain that the decedent was about to shoot him, Logan opened fire. Officer Simpson testified that when he heard shots and saw Logan fall, he thought his fellow officer had been hit. Seeing Grisom turn toward him, Simpson felt that his own life was in danger and he also fired. In all, eight bullets were fired. Four of them struck and killed Grisom.

In support of their first claim, plaintiffs testified that the decedent was unarmed and that the loaded gun found near the body was planted there as part of a conspiracy to fabricate self-defense in order to thwart an action for wrongful death. On the second claim, plaintiffs testified that the infant, Andre Grisom, was injured when a bullet grazed his foot. Defendants offered the testimony of Dr. Robert Small, who examined a cut on the infant's foot on the day after the shooting but was unable to say whether it was caused by a bullet. For the third claim, Adeline Grisom testified that the defendants falsified evidence in order to concoct charges against her for perjury at the coroner's inquest. The perjury charges were dropped after a preliminary hearing.

All three claims were brought under the Civil Rights Act as violations of the constitutional rights of the decedent and his heirs.

■■ We turn now to plaintiffs' motion for leave to appeal in forma pauperis. An appeal in forma pauperis will not be permitted if it is so frivolous that it would not be allowed in the case of a non-indigent or is not taken in good faith. Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). We find and conclude that not one of the issues raised here is arguable on law or on the basis of undisputed facts in the record. The appeal, therefore, is frivolous and is not taken in good faith.

■■ There is also serious question as to whether one of the plaintiffs, Jimmie Grisom, Sr., is financially unable to pay the costs of an appeal. In his affidavit, Mr. Grisom said that his net salary was approximately $325.00 per month and that he received $150.00 per month in rental income on property he owns. His property has an approximate value of $15,000.00, and he also owns a 1963 automobile. Mr. Grisom makes monthly mortgage payments of $145.00. Though it is not necessary for a litigant to impoverish himself before he can appeal in forma pauperis, it is necessary that he show something more than mere hardship. Martin v. Gulf States Utilities Co., 221 F.Supp. 757 (W.D.La.1963). The facts shown in the affidavit of Mr. Grisom do not meet this test.

■ We come now to a discussion of the appeal on the merits. The first issue, tendered for appeal by Adeline Grisom, is that the trial court committed prejudicial error in dismissing at the end of plaintiffs' case her claim that the defendants violated her constitutional rights by falsely arresting and maliciously prosecuting her for perjury.

This claim was dismissed because the evidence clearly showed probable cause for bringing perjury charges against Adeline Grisom. A tape recording of her call to the police on the night of April 10, 1965 and the record of her testimony at the coroner's inquest were both received in evidence. These indisputable records showed that at the inquest Mrs. Grisom denied knowledge of her son's having a gun, while on the night in question she told police that he did have one. There was, therefore, strong evidence that some of her inquest testimony was false, and that alone provided sufficient

probable cause to institute perjury charges against Mrs. Grisom and to arrest her. Probable cause exists when the facts and circumstances would warrant a reasonable man to believe that the person charged with the crime committed it. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). The fact that Mrs. Grisom was not subsequently tried for the crime does not eliminate the basis for making the arrest. Henry v. United States, *supra*.

Bringing this claim as a violation of civil rights rather than as a tort action for false arrest does not alter the situation. The defense of good faith and probable cause, which is available to police officers in a common law tort action, is also available in an action brought under 42 U.S.C. § 1983. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). In Strutt v. Upham, 440 F.2d 1236 (9th Cir. 1971), summary judgment in favor of a policeman in a civil rights action was affirmed when the court found that the policeman had ample probable cause and acted in good faith in arresting the plaintiff.

Plaintiffs' counsel argued at trial that Mrs. Grisom was charged with twelve counts of perjury, some of which were based only on the word of the police officers involved. This may be true, but at least one of the charges was based on unquestionable recorded evidence, and one incidence of perjury would be sufficient for conviction. Arena v. United States, 226 F.2d 227 (9th Cir. 1955), cert. denied, 350 U.S. 954, 76 S.Ct. 342, 100 L.Ed. 830 (1956).

Counsel further suggested that the perjury charge was deliberately concocted to discourage or prevent Mrs. Grisom from bringing her claim for wrongful death. There was no evidence of that, but even if the investigation into plaintiff's inquest testimony were proven to have been maliciously motivated, her civil rights would not have been violated if actual probable cause existed for the subsequent arrest. Beauregard v. Wingard, 362 F.2d 901 (9th Cir. 1966).

Mrs. Grisom's claim of false arrest and malicious prosecution was, thus, dismissed as a matter of law based on unquestionable facts. We find, therefore, that the appeal on this issue is frivolous and is not taken in good faith.

The second issue, also raised by Adeline Grisom, asks whether the alleged falsification of evidence at her preliminary hearing for perjury constituted a denial of her right to due process even though the charges against her were dropped. The court held that it did not and dismissed the claim. Before a cause of action for denial of due process arises under 42 U.S.C. § 1983, there must, in fact, have been such a denial. United States ex rel. McNeill v. Tarumianz, 141 F.Supp. 739 (D.Del.1956).

Plaintiff here was seeking damages where there were no damages. Any testimony given by defendants at Adeline Grisom's preliminary hearing obviously did not deprive her of her right to due process, since the charges against Mrs. Grisom were dismissed at the end of that hearing.

At trial, counsel for plaintiff argued for this claim by citing cases that involve prisoners convicted through allegedly perjured testimony and suppressed evidence. These cases were clearly inapposite. There is no question that a prisoner may seek to have a conviction obtained through perjured testimony set aside as a violation of due process. Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967). But the court has found no case where the use of such testimony provided grounds for a suit for damages when the charges were subsequently dropped. One court has held that even where a trial was conducted and the accused person acquitted, that acquittal would bar a claim for damages for false testimony given at the trial. Symkowski v. Miller, 294 F.Supp. 1214 (E.D.Wisc.1969).

Plaintiff's appeal on this claim is, therefore, frivolous and is not taken in good faith when the facts clearly show that there was no deprivation of her rights.

278

The third issue, raised by all plaintiffs, asks whether the court committed prejudicial error by dismissing the claim of conspiracy against the three defendants not involved in the actual shooting and by refusing to allow the jury to consider post-homicide conduct of the defendants as part of the conspiracy.

Plaintiffs' statement of the issue is not an accurate account of what occurred at the trial. Plaintiffs' conspiracy claim, to say the least, was confusing, and their efforts at trial did little to clarify it. They alleged a conspiracy to deprive John Grisom of his constitutional rights by wrongfully killing him and a conspiracy to deprive his heirs of their right to recover for the wrongful death.

■ We look first at the claim of a conspiracy against the decedent. No evidence was presented to show the existence of any conspiracy against John Grisom before the shooting, and plaintiffs' counsel admitted that there was no such conspiracy. However, plaintiffs maintained that the cause of action still existed because the post-homicide conduct of the defendants made them all parties to a wrongful death conspiracy "retroactively." We rejected plaintiffs' concept of a retroactive conspiracy. A conspiracy under 42 U.S.C. § 1985 requires a purposeful intent to deprive someone of the privileges and immunities of the law. Hoffman v. Halden, 268 F.2d 280 (9th Cir. 1959). Plaintiffs' counsel admitted at trial that such intent did not exist before the shooting, and it defies logic to suggest that the post-homicide conduct could create it. This conspiracy claim was properly dismissed since, by plaintiffs' own admission, the fundamental element of "agreement," express or implied, was missing.

■ Plaintiffs' claim of a conspiracy to deprive decedent's heirs of their right to recover for wrongful death was also properly dismissed. Though civil conspiracy has never been clearly defined as a tort, it is generally held that the gist of the action is not the agreement itself but the overt acts which damage the plaintiff. Prosser, Law of Torts 260 (1964). This is true also of the conspiracy action created by the Civil Rights Acts. Plaintiff must be injured in his person or property or deprived of a constitutional right as a result of acts in furtherance of the conspiracy. Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951); Hoffman v. Halden, supra.

The essential element of damages was missing from plaintiffs' claim. We explained at considerable length to counsel for plaintiffs that before they could recover damages for a conspiracy to deprive them of their right to recover for wrongful death, they must, in fact, suffer damages or be deprived of that right, and offered to charge the jury on that basis. We did not, as counsel asserts, refuse to permit the jury to consider post-homicide conduct. Rather, we offered to charge that if plaintiffs lost on the wrongful death claim, the jury could consider whether or not they were deprived of recovery by a post-homicide conspiracy to falsify evidence. Counsel for plaintiffs rejected this offer and asked us not to instruct the jury on conspiracy at all.

Plaintiffs' renewal of this claim without any attempt at clarification and without accurately describing what the trial court did must be considered frivolous and not made in good faith.

The fourth issue raised by plaintiffs involves the exclusion of three items of evidence by the court. These rulings were a proper exercise of the discretion the court has with regard to demonstrative evidence. Sedlack v. General Motors Corp., 253 F.2d 116 (7th Cir. 1958).

■ The first item is a photograph of the decedent's body taken shortly after the shooting. It shows John Grisom lying on his back with blood stains apparent on his clothes and face. Plaintiffs claimed the picture was significant because there was a dispute about the position of the body. The defendants said that the decedent fell down on his back after officer Logan's first shots and then raised himself halfway up again and pointed his gun as if to fire.

The police maintained that they were then forced to fire more shots at Grisom. Plaintiffs claimed that Grisom fell face down after the first shots and could not have raised himself up in the manner described. There were sufficient verbal descriptions of the position of the body given by both sides for the jury to understand the issue without seeing the photograph. The picture could have been highly inflammatory. Such lurid evidence should be excluded when it is not necessary. Ryan v. United Parcel Service, Inc., 205 F.2d 362 (2d Cir. 1953).

■■■ The second item of evidence at issue is the deposition of a witness who said that just before the shooting she heard the decedent say, "Mamma, call Mother Grey." Mother Grey was the Grisom family's spiritual advisor. Plaintiffs maintain—without explaining exactly how—that this statement was exculpatory and that the deposition should not have been excluded. Plaintiffs failed to lay any foundation for the introduction of the deposition. Rule 32(a) (3), Fed.R.Civ.P. The deposition was, thus, properly excluded on that ground. Moreover, the deposition testimony was cumulative. Three other witnesses had already testified that the decedent had made the statement, and the introduction of the deposition would only have cluttered the evidence with needless repetition. A trial court has wide discretion in excluding cumulative evidence. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940).

■■■ The third item is a photograph of a man whom a witness for plaintiffs claimed to have seen placing a gun near the decedent's body after the shooting. Plaintiffs claimed that the man in the picture was a plainclothesman, but they were unable to offer any evidence to establish this. Without such identification, the picture was not probative and therefore properly excluded. Meadows & Walker Drilling Co. v. Phillips Petroleum Co., 417 F.2d 378 (5th Cir. 1969).

The court's rulings on these items of evidence were well within its discretion, and plaintiffs' appeal must be considered frivolous.

The final two issues raised on appeal involve the alleged wounding of Andre Grisom. Plaintiff Andre Grisom, through his guardian, suggests that under the Civil Rights Act, self-defense would not be a defense to a claim based on injury to an innocent bystander and that the jury should have been instructed to that effect.

The jury was instructed to determine if Andre Grisom's civil rights had been violated by deciding whether the infant had actually sustained an injury, whether the officers reasonably believed that their lives were in danger when they shot, whether they used excessive force in protecting their lives, and whether the police acted maliciously, wantonly or oppressively toward Andre Grisom.

■■■ We think the self-defense standard was the appropriate one to apply in this action. It is firmly established that a person who is reasonably defending himself against an assailant bears no liability for accidental injury to a third party. Prosser, Law of Torts 113 (1964).

■■■ The fact that the claim is brought as a civil rights violation rather than as a simple tort does not change the defense standard. In Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed. 2d 492 (1961), the Supreme Court said that actions under 42 U.S.C. § 1983 should be looked at in the light of their tort background, and courts have done so by applying tort defenses to claims brought under the statute. In Pierson v. Ray, *supra*, the defense of probable cause was held applicable to a civil rights action based on false arrest. And in Sanders v. Buchanan, 407 F.2d 161 (10th Cir. 1969), the self-defense standard was applied to a claim under 42 U.S.C. § 1983 in which the plaintiff had been shot by a policeman.

The Supreme Court has added little to the doctrine it set forth in *Monroe,* but

some commentators have suggested that the constitutional claim and the tort claim should not be completely parallel, since the purpose of the civil rights action is to protect individual rights and the purpose of the tort action is to compensate the injured party.[2] But no commentator has suggested and no cases have been cited by plaintiff or found by the court to suggest that the self-defense standard should not be applied in a civil rights action such as the present one.

Plaintiff, in his appeal, implies that under the Civil Rights Act police officers forfeit their right to protect their lives with reasonable force. It is doubtful that Congress intended such a result. Plaintiff still does not offer any suggestion as to what standard would be appropriate here. The appeal on this issue must be considered not to be taken in good faith.

Plaintiffs' motion for leave to appeal in forma pauperis in this action is denied.

The foregoing opinion constitutes this court's findings of fact and conclusions of law.

So ordered.

---

2.  Comment, 45 Texas L.Rev. 1015 (1967) ; Shapo, Constitutional Tort: Monroe v. Pape and the Frontiers Beyond, 60 Nw.U. L.Rev. 277 (1965).