**Luella HOLMES and Elizabeth Y. Thomas, Plaintiffs–Appellants,**

v.

**Joan FINNEY, E. Dean Eikenberry, Harrasetta H. Kinney, William B. McCormick, and Kenneth L. Elder, Defendants–Appellees.**

No. 77–1931.

United States Court of Appeals, Tenth Circuit.

Submitted April 17, 1979.

Decided Sept. 12, 1980.

Fred W. Phelps, Topeka, Kan., for plaintiffs–appellants.

Jerry R. Palmer, of Stumbo, Stumbo, Palmer, McCallister & Buening, Topeka, Kan., for defendants–appellees.

Before HOLLOWAY, DOYLE and LOGAN, Circuit Judges.

HOLLOWAY, Circuit Judge.

Plaintiffs–appellants Luella Holmes and Elizabeth Y. Thomas appeal a summary judgment dismissing their claims and those of plaintiff Fredia Twine Carrington assert-

ed under the civil rights provisions of 42 U.S.C. §§ 1981, 1983 and 1985(3) against defendants–appellees Joan Finney, E. Dean Eikenberry, Harrasetta H. Kinney, William B. McCormick, and Kenneth L. Elder. The principal claim of the first amended complaint alleged that defendants, who were connected in various capacities with the Topeka Housing Authority,[1] had conspired "for the purpose of depriving plaintiffs of the equal protection of the laws and of the equal privileges and immunities under the laws." The civil rights claims principally concern tape recording incidents detailed below.

## I

### The plaintiffs' claims

The plaintiffs' pleadings alleged that defendants "conspired to arrange a clandestine tape recording of plaintiffs in the office of the defendant Eikenberry"; that defendants "did conspire to keep such fact secret from plaintiffs for the purpose of entrapping plaintiffs in their conversation so that defendants could gain an improper and unlawful advantage over these plaintiffs who were in an inferior bargaining position to defendants"; that defendants "did moreover conspire to thereafter use said tape recordings of the conversations of plaintiffs against them in a political and socio–economic way, plaintiffs then being the employees of the Topeka Housing Authority and whose jobs were being threatened by the said conduct of defendants and whose financial security was thus at stake"; and that defendants were acting under color of state law. These actions were said to violate 42 U.S.C. §§ 1981, 1983 and 1985(3).

Plaintiffs also charged that in furtherance of the alleged conspiracy defendants "did in fact make clandestine tape record-

ings of the conversations of these plaintiffs in the office of the defendant Eikenberry, all without the prior knowledge or prior consent of plaintiffs"; that plaintiffs Holmes and Carrington were black; that plaintiff Thomas was "Spanish–American"; that all defendants were Caucasian; and that the "matters and things complained of herein were committed and done unto plaintiffs because of their said race, in violation of 42 U.S.C. § 1981." Finally, plaintiffs alleged as to damages that they "have sustained actual damages as a consequence hereof in the amount of $100,000.00 each and are entitled to recover punitive damages from defendants in addition in the amount of $100,000.00 each."

## II

### The district court's rulings

The trial court treated defendants' "Motion for Determination of Issues in Advance of Trial" as a motion for summary judgment. Having reviewed the pleadings and the other summary judgment documents the court found no allegations of an "affirmative link," see *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561; *Kite v. Kelley*, 546 F.2d 334 (10th Cir.), "with regard to *direct* participation in the acts complained of" by defendants McCormick or Elder, and concluded that "this action cannot be maintained against [them] solely upon the ground of respondeat superior." Rather, plaintiffs' claim against these defendants "must stand or fall upon plaintiffs' allegations of a knowing and voluntary conspiracy."

The court went on to note plaintiffs' own statement in one of their pleadings (*see* I R. 70, 80) that "the only connection of defendants Elder and McCormick to the alleged

---

1. All parties were, at times relevant to this lawsuit, affiliated in some way with the Topeka Housing Authority of Topeka, Kansas, in which there was said to be a good deal of dissension and chaos due to other matters not directly involved in the present case.

Defendant McCormick was Mayor of Topeka and defendant Elder was the City's Finance Commissioner. Both of these individuals were

members of the board which governed the Housing Authority, apparently by virtue of their respective offices. Defendants Finney and Eikenberry worked directly within the Authority in supervisory capacities and defendant Kinney, as well as the plaintiffs, were Housing Authority employees under the direct supervision of defendants Finney and Eikenberry.

conspiracy other than principal–agent ties was the alleged statement of defendant McCormick before he admits knowing of the tapes 'that he would never have plaintiff Frieda [*sic*] Carrington work for him.'" The court's memorandum stated "[i]t would be a litigious day indeed when a mere statement of personal animosity could alone be taken as indicative of a conspiracy to violate civil rights." (I R. 80). Nor did the court feel that an inference of conspiracy could be drawn from the mere fact that the challenged taping incidents followed very closely in time the appointment, ostensibly by defendant McCormick, of defendants Eikenberry and Finney to supervisory positions in the Topeka Housing Authority.

Thus the court found that there were "no facts alleged or admitted which would justify cognizance of the [conspiracy] claims against defendants Elder or McCormick." The court then concluded that "[i]f plaintiffs cannot show a conspiracy for purposes of 42 U.S.C. § 1985(3), it follows *a fortiori* that they cannot establish a conspiracy for purposes of § 1981 or § 1983," and that the claims against these defendants therefore could not stand.

As to defendants Kinney, Finney, and Eikenberry, the court declined to find the allegations of conspiracy insufficient since "[s]ome degree of participation, however attenuated, is alleged as to each." The court emphasized a distinction between "the facts alleged to imply conspiracy, and the nature of the wrongs allegedly committed pursuant thereto," and proceeded to determine whether "the mere taping of a conversation by one a party to it is, or is not, a violation of any civil rights statute," concluding ultimately that "no right safeguarded by either 42 U.S.C. § 1981 or § 1983 [was] violated by the act of taping itself, no matter how intentional or surreptitious," and that "[i]nsofar as plaintiffs' case rests upon any *direct* invasion of their rights under [these sections] stemming from the act of recording itself, it must be dismissed."

**2.** The trial court's memorandum states that "[i]t is alleged defendants intended to use the tapes 'in a political and socio–economic way'

The court then confronted the question "whether an alleged conspiracy to violate civil rights is actionable when no rights are actually violated pursuant to the conspiracy, and it is unclear how the acts actually committed could further a design to violate such rights." Applying the principles that "the gist of [a conspiracy] action is not the agreement itself but the overt acts which damage the plaintiff," and that thus "there [must] be some resulting injury or deprivation of rights before the conspiracy is actionable," citing *Grisom v. Logan*, 334 F.Supp. 273, 278 (C.D.Cal.), the court noted that "*[i]n the present case no discriminatory action was ever taken with regard to the tape recording*," (emphasis added)[2] that "[n]o rights secured by the Constitution were ever violated," and that "[i]f there was a conspiracy to do so, the only 'overt act' done in furtherance of the conspiracy was the act of recording itself, which . . does not rise to the level of an actionable violation." In the face of divided views as to whether or not a § 1985(3) action requires an overt act which is itself illegal the court expressed its disposition to follow the Fifth Circuit's ruling in *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919, that such a conspiracy must be "to deprive another of the enjoyment of legal rights by independently unlawful conduct."

The court relied on *Taylor v. Nichols*, 409 F.Supp. 927 (D.Kan.), aff'd, 558 F.2d 561 (10th Cir.), to support the conclusion that even "were we to repudiate the McLellan 'independent wrong' test, the lack of injury alone would preclude entertaining this suit." Specifically, the court noted that "[a]t least one plaintiff still works for the Topeka Housing Authority"; that "Mrs. Carrington was not even invited to the taped conversation, but appears to have attended for evidentiary purposes of Mrs. Taylor [*sic*], just as the tapes appear to have been made to memorialize what was said"; that "[p]laintiffs in this case have not speci-

against plaintiffs although they were never so used." (I R. 82).

fied in what particulars they were damaged by the making of the recordings"; and that "it is clear that the actions of defendants did not rise to the level of an actionable tort, much less a deprivation of a protected right." The court concluded that if there was no actionable conspiracy for § 1985(3) purposes, there could be none upon which to base the § 1981 or § 1983 claims, and that the entire suit should therefore be dismissed.

For reversal plaintiffs argue that: (1) the existence of genuine issues of material fact preclude summary judgment; (2) defendants McCormick and Elder are proper parties because they are either directly or vicariously liable, or liable under respondeat superior principles, for the acts of the other defendants; (3) that a § 1985(3) conspiracy, as well as § 1981 and § 1983 claims, have properly been pleaded because the elements of conspiring, a purpose of denying either equal protection or equal privileges and immunities, an overt act, injury to person and property or deprivation of exercising the rights of citizens, action under color of state law, and a class–based invidiously discriminatory animus have been sufficiently alleged; and (4) that an "actionable" conspiracy exists when a legal means is used toward an unlawful end.

In our view of the case we conclude that we need only discuss the questions whether there was a sufficient showing of a violation of the rights of plaintiffs to support a conspiracy claim under § 1985 and whether the showing of the defendants' actions in arranging and carrying out the surreptitious taping, without more, can sustain the claims under §§ 1981 and 1983. We find no procedural problem in the handling of the matter by summary judgment since we con-

clude that, viewing the record most favorably to the plaintiffs, the defendants were entitled to judgment as a matter of law.[3]

### III

*The elements of the civil rights claims*

As stated in *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338, four requirements must be met by a plaintiff seeking to state a cause of action under § 1985(3):

> To come within the legislation a complaint must allege that the defendants did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property," or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

*See Fisher v. Shamburg*, 624 F.2d 156 (10th Cir. 1980).

Beyond these guidelines there is disagreement as to whether § 1985 affords a remedy on the mere showing of a discriminatorily motivated conspiracy, or whether the plaintiff must further demonstrate a violation of some right protected independently of § 1985. *Compare McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919, 924–28 (5th Cir.) (en banc) (stating that an independent wrong is necessary, but apparently

---

**3.** Though we do not decide the issue whether damages are recoverable under the involved statutes for mental anguish, emotional distress, humiliation, embarrassment, or harassment, we note that the district court's holding that they are not is of doubtful validity in light of language in the Supreme Court's opinion in *Carey v. Piphus*, 435 U.S. 247, 264, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252. *See also*, Annotation, Recovery of Damages for Emotional Distress Resulting from Racial, Ethnic, or Religious Abuse or Discrimination, 40 A.L.R.3d 1290.

We also do not decide whether defendants McCormick and Elder can be held liable directly or under some respondeat superior theory because the claims against all defendants lack merit due to the failure to show a violation of plaintiffs' rights.

deciding the case on the basis of a lack of the requisite class–based discriminatory animus); *and Life Ins. Co. of North America v. Reichardt*, 591 F.2d 499, 502–05 (9th Cir.) (§ 1985(3) "require[s] the deprivation of any legally protected right"); *with Novotny v. Great American Federal Savings & Loan Association*, 584 F.2d 1235, 1247 & n.55 (3d Cir.) (en banc) *rev'd on other grounds*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 ("This is not to say, however, that the object of the conspiracy must necessarily be independently illegal, or that the law conferring a right must by its own force secure it against private action").

▪ Though the Supreme Court has not decided this point, we feel that the Court has indicated that a violation of an independently created right is required. Section 1985(3) ". . . by contrast, *creates* no rights. It is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right–to equal protection of the laws or equal privileges and immunities under the laws–is breached by a conspiracy in the manner defined by the section." *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 376, 99 S.Ct. 2345, 60 L.Ed.2d 957. "The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338. We feel that infringement of some federally protected right independent of § 1985(3) is required for a violation of the conspiracy statute to be demonstrated.[4]

▪ We find no such violation of an independently protected right here because no constitutional or statutory rights were violated by the mere taping of a conversation

by one a party to it, even if that recording was done surreptitiously. *See, e. g., United States v. Caceres*, 440 U.S. 741, 750–51, 99 S.Ct. 1465, 1470–1471, 59 L.Ed.2d 733; *United States v. White*, 401 U.S. 745, 749, 91 S.Ct. 1122, 1124, 28 L.Ed.2d 453; *United States v. Quintana*, 457 F.2d 874, 877–78 (10th Cir.), *cert. denied*, 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130; *Holt v. United States*, 404 F.2d 914, 919–20 (10th Cir.), *cert. denied*, 393 U.S. 1086, 89 S.Ct. 872, 21 L.Ed.2d 779; *State v. Tsavaris*, 382 So.2d 56, 60–61 (Fla.App.). Accordingly, the trial court did not err in dismissing the claim under § 1985(3).

▪ For similar reasons we are satisfied there was no error in dismissing the claims under § 1983 and § 1981, which were bottomed on the same allegations. The § 1983 remedy broadly encompasses violations of federal statutory as well as constitutional law. *See Maine v. Thiboutot*, —— U.S. ——, ——, 100 S.Ct. 2502, 2503, 65 L.Ed.2d 555; and *see Gomez v. Toledo*, —— U.S. ——, ——, 100 S.Ct. 1920, 1922, 64 L.Ed.2d 572 (only two allegations are required to state a cause of action under § 1983: that some person deprived the plaintiff of a federal right, and that such person acted under color of state or territorial law). However, a plaintiff's claim under § 1983, and likewise we feel under § 1981, must be grounded on the violation of a right of substance and not merely on a theoretical speculation that some right has been infringed. *See Wiley v. NCAA*, 612 F.2d 473 (10th Cir.) (en banc) *cert. denied,* 446 U.S. 943, 100 S.Ct. 2168, 64 L.Ed.2d 798; *Freeman v. Flake*, 448 F.2d 258, 261 (10th Cir.), *cert. denied,* 405 U.S. 1032, 92 S.Ct. 1292, 31 L.Ed.2d 489. We stated in *Freeman* that a federal constitutional question ·must exist not in mere

---

4. In here referring to federally protected rights, we do not feel that all consideration of state law is excluded. For example, a conspiracy for the denial of equal protection by class–based discrimination in the application of state licensing laws could come within § 1985(3), for it would involve the core violation of federal equal protection principles as old as *Yick Wo v.*

*Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220. No underlying state law has been cited to us here and we find no indication in Kansas law that the mere taping under these circumstances would be a violation of state law. *See* K.S.A. 21–4001 (Kansas eavesdropping statute); *State v. Wigley*, 210 Kan. 472, 502 P.2d 819.

 

form, but in substance, and not in mere assertion, but in essence and effect. *Id.* at 261 (quoting *Cuyahoga River Power Co. v. Northern Ohio Traction and Light Co.*, 252 U.S. 388, 397, 40 S.Ct. 404, 408, 64 L.Ed. 626); *Atkins v. Lanning*, 556 F.2d 485, 489 (10th Cir.). Here there was no discriminatory action taken with regard to the tape recordings, as the trial court noted. We conclude the mere taping, without more, did not violate a cognizable right which may be asserted as a claim under § 1983 or § 1981.

AFFIRMED.