(643 P.2d 1101)
No. 53,046

STATE OF KANSAS, *Appellee,* v. LARRY WOLF, *Appellant.*

Petition for review denied May 21, 1982.

Opinion filed April 1, 1982.

*Jack Focht,* of Smith, Shay, Farmer & Wetta, of Wichita, for appellant.

*Cris Senseman,* assistant district attorney, *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before ABBOTT, P.J., PARKS and MEYER, JJ.

PARKS, J.: Defendant Larry Wolf appeals his jury conviction for conspiracy to commit arson.

During the early morning hours of April 17, 1978, a building leased by Wolf as a grocery store was destroyed by fire. When asked on April 24 to take a polygraph examination in connection with the fire, Wolf declined on the advice of his attorney.

Meanwhile, on April 21, 1978, Samuel Phillips was arrested for possession of stolen property. He gave a statement to the Sedgwick County District Attorney's office regarding the fire and implicating Wolf. Phillips was granted immunity from prosecution on charges relating to the fire and was sent by the district attorney's office, equipped with a transmitting device, to Wolf's grocery store on June 10, August 16 and August 22, 1978, to engage Wolf in conversation concerning the fire. On each occasion Phillips' conversation with Wolf was monitored and recorded on separate cassettes in a sheriff's van parked nearby. Subsequently, approximately seven to eight minutes of conversation was extracted from the three cassettes and rerecorded on

one tape. This tape was admitted at trial, over the objection of defendant, as State's Exhibit 13.

During the trial Perry Guffey admitted that he started the fire in order to fulfill an agreement that he and his brother, John Guffey, had made with Larry Wolf to burn the store for $5,000. Because John Guffey was not present at the trial, defendant objected to this testimony as hearsay but was overruled. The State's theory was that Wolf had conspired with John Guffey to burn his store and John had obtained the services of his brother and Samuel Phillips to set the fire. Defendant Wolf's theory of the fire's origin was that it was caused by lightning which struck at 1:53 a.m. on April 17, 1978.

The first issue raised on appeal is whether the trial court erred in denying defendant's motion to suppress tape-recorded statements made by defendant to an undercover agent at a time when the police knew that defendant had retained counsel in regard to the investigation.

The parties stipulated that (1) at the time the monitored conversations were held between Phillips and Wolf, the State was aware that Wolf was represented by an attorney; (2) the State knew that Carl Jones, a Wichita Fire Department investigator, had asked Wolf to take a polygraph examination and that he had declined on advice of his attorney; (3) that Samuel Phillips was working as an agent of the State of Kansas and that such agency was not known to Wolf; and (4) that no arrest of Wolf was made prior to charges being filed on October 9, 1978.

Wolf argues that his right to counsel under the Fifth and Sixth Amendments was violated because, although he had not been charged, he had become the "focus" of the investigation and the authorities knew he had retained counsel regarding the investigation. His argument is based primarily on *Escobedo v. Illinois,* 378 U.S. 478, 12 L.Ed.2d 977, 84 S.Ct. 1758 (1964) and *Massiah v. United States,* 377 U.S. 201, 12 L.Ed.2d 246, 84 S.Ct. 1199 (1964).

*Escobedo* held that an accused's Sixth Amendment right to counsel is violated when, prior to indictment and with the investigation focusing on him, he is taken into custody, interrogated, and denied an opportunity to consult with his lawyer despite a request to do so. *Massiah* held that the Sixth Amendment is violated when, after indictment, the police deliberately elicit incriminating statements from an accused in the absence of his

lawyer through the surreptitious interrogation of an undercover agent. See also *State v. McCorgary,* 218 Kan. 358, 543 P.2d 952 (1975), *cert. denied* 429 U.S. 867 (1976). However, *Escobedo* was subsequently limited to its facts and the Supreme Court has reaffirmed the rule that the Sixth Amendment right to counsel attaches only "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689, 32 L.Ed.2d 411, 92 S.Ct. 1877 (1972) (plurality opinion).

It was against this background that the precise arguments urged by the defendant in the present case were rejected in *United States v. Lemonakis,* 485 F.2d 941 (D.C. Cir. 1973), *cert. denied* 415 U.S. 989 (1974). In *Lemonakis,* police were investigating a series of burglaries. One of the admitted participants, Scouloukas, surrendered himself to the authorities and sought immunity, which was granted. Thereafter he initiated conversations with the other participants, Enten and Lemonakis. Some of the conversations were surreptitiously recorded after the police knew that Enten and Lemonakis had secured counsel. Like Wolf, Enten and Lemonakis were not indicted until after the conversations were recorded. Citing *Escobedo* and *Massiah,* the court held that the Sixth Amendment does not forbid the securing of admissions by undercover tactics prior to arrest or indictment and that the right to counsel prior to arrest or indictment extends only to custodial interrogations. The court went on to state that insofar as the Fifth Amendment privilege against self-incrimination included a right to counsel it applied only to custodial interrogations.

We concur with this interpretation of the Fifth and Sixth Amendments and conclude that the U. S. Constitution does not prohibit the use of noncustodial statements made by a defendant and recorded by an undercover agent at a time when the police knew defendant had retained counsel in regard to the investigation.

The *Lemonakis* court also rejected an argument that such preindictment electronic surveillance violates the Code of Professional Responsibility, an argument indirectly made by defendant in the present case. In finding no violation of the provision prohibiting an attorney from communicating or causing

another to communicate with a party he knows to be represented by a lawyer about the subject matter of the representation, DR 7-104, 228 Kan. cxv., the court stated in part:

"Here, in the investigatory stage of the case, the contours of the 'subject matter of the representation' by appellants' attorneys, concerning which the code bars 'communication,' were less certain and thus even less susceptible to the damage of 'artful' legal questions the Code provisions appear designed in part to avoid. Finally, we cannot say that at this stage of the Government's investigation of a criminal matter, the public interest does not—as opposed to the different interests involved in civil matters—permit advantage to be legally and ethically taken of a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it. We find there was no ethical breach by the U.S. Attorneys prosecuting the case . . . ." 485 F.2d at 956. (Citations omitted.)

There is an exception in DR 7-104(A)(1) where an attorney may communicate with one of adverse interest when authorized by law to do so. In most instances the district attorney may confer with individuals concerning criminal investigations. We find no error based on the facts of this case.

Wolf also argues that even if the surveillance conducted in the present case does not violate the federal Constitution, Kansas is free to determine that the state constitution has been violated. He relies on the New York rule that once an accused is charged and represented by counsel he may not be questioned, in the absence of counsel, on an unrelated charge. See *e.g., People v. Bartolomeo,* 53 N.Y.2d 225, 440 N.Y.S.2d 894, 423 N.E.2d 371 (1981). Kansas has not adopted this rule but has held that undercover agents posing as cell mates may elicit incriminating statements from indicted persons on unrelated crimes. *State v. McCorgary,* 224 Kan. 677, 585 P.2d 1024 (1978). Therefore, we cannot analogize to the New York rule but conclude that our state constitution was not violated by the use of the statements which were made during a noncustodial interrogation.

Defendant Wolf next complains that the trial court erred in admitting State's Exhibit 13, the redacted tape recording of the conversation between defendant and the undercover agent. Wolf contends that the edited tape was not admissible in the first instance because the court failed to find that either the initial tapes from which Exhibit 13 was compiled or the redaction process used in compiling it were trustworthy. *State v. Treadwell,* 223 Kan. 577, 575 P.2d 550 (1978). The record discloses that Samuel Phillips and Lt. Phipps, the police officer who monitored

and taped the conversations, both testified concerning the accuracy of the original tapes. In addition, Phipps and Mike Nichols, an electronics expert who worked on rerecording and editing the tapes, testified concerning the length of the original recordings and the redaction process. In light of this testimony, the trial court's admission of the exhibit must be viewed as including an implied finding of trustworthiness.

Wolf also argues that the tape was irrelevant evidence and therefore inadmissible because the redaction process rendered it misleading and "impossible to relate . . . to anything." Relevant evidence is evidence having any tendency in reason to prove any material fact. K.S.A. 60-401(*b*). The taped conversation included references to the parties alleged to be part of the conspiracy with Wolf and the payment of money to them. Any ambiguities in the meaning of the conversation related to the weight to be given the remarks rather than their admissibility. We conclude that the edited tape was not so confusing as to be irrelevant.

Wolf further argues that Exhibit 13 was not relevant because a part of the tape included a discussion between defendant and the informant concerning two other fires which occurred at about the same time as the fire in question. The record reveals that these fires had already been discussed by witnesses at the trial, thus no prejudice to defendant is shown by the admission of this evidence.

Finally, Wolf argues that Exhibit 13 was objectionable because it contained post-conspiratorial hearsay statements of John Guffey. However, the transcript of Exhibit 13 indicates that statements attributed to John were either related by Wolf himself, or were not offered to prove the truth of the matter stated and therefore were not hearsay. Thus, this argument is also without merit.

We conclude that the trial court did not err in admitting State's Exhibit 13.

After the redacted tape had been admitted and played for the jury, Perry Guffey testified that in the last week of March or the first week of April 1978, he met with his brother, John, at a garage on South Seneca in Wichita. Wolf complains that it was error to admit the following hearsay statement because John was neither present nor available as a witness at trial:

"Q. And tell us what that conversation was, please?
A. He asked me if I wanted to contract to burn a store down, and I said yes, and we agreed on the price.
Q. Which was?
A. Five thousand dollars, and he gave me some money then, and gave me a key to the building, told me to get a key made, and get the original back to him, because he had to give it back to Larry pretty quick."

This statement was admitted under K.S.A. 60-460(*i*), which provides:

"As against a party, a statement which would be admissible if made by the declarant at the hearing if (1) the statement concerned a matter within the scope of an agency or employment of the declarant for the party and was made before the termination of such relationship, or (2) *the party and the declarant were participating in a plan to commit a crime or a civil wrong and the statement was relevant to the plan or its subject matter and was made while the plan was in existence and before its complete execution or other termination,* or (3) one of the issues between the party and the proponent of the evidence of the statement is a legal liability of the declarant, and the statement tends to establish that liability;  . . ." (Emphasis supplied.)

Our Supreme Court recently interpreted subsection two of this provision in *State v. Rider, Edens & Lemons,* 229 Kan. 394, 404, 625 P.2d 425 (1981), and *State v. Roberts,* 223 Kan. 49, 60, 574 P.2d 164 (1977). The Court said:

"K.S.A. 60-460(*i*) addresses a third party situation. Its requirements apply when the party (defendant) and the declarant (coconspirator) are participating in a plan to commit a crime and a third person (witness) is later called to testify as to the coconspirator's statements made outside the presence of the defendant concerning the conspiracy for the purpose of establishing defendant's participation in the conspiracy and crime. As previously pointed out the theory of admissibility is that each .party to the conspiracy becomes an agent for the others. Therefore as an agent his statements to a third person bind not only himself but the others for whom he is acting. *Under this theory of admissibility the conspiracy out of which the agency arises must be proven before the third party may testify against a coconspirator as to the declarant's statements made in the absence of the defendant-coconspirator."* (Emphasis supplied.)

Rules governing conspiracy were recently stated in *State v. Small,* 5 Kan. App. 2d 760, Syl. ¶ ¶ 1-3, 625 P.2d 1, *rev. denied* 229 Kan. 671 (1981). The Court said:

"Conspiracy as defined by K.S.A. 21-3302 consists of two essential elements: (1) An agreement between two or more persons to commit or assist in committing a crime and (2) the commission by one or more of the conspirators of an overt act in furtherance of the object of the conspiracy."

"To establish a conspiracy it is not necessary that there be any formal agreement manifested by formal words, written or spoken; it is enough if the parties tacitly

come to an understanding in regard to the unlawful purpose and this may be inferred from sufficiently significant circumstances."

"While an agreement is a necessary element of a conspiracy, the existence of the agreement need not be proved directly but may be inferred from other facts proved. If one concurs in a conspiracy, no proof of an agreement to concur is necessary to establish his guilt."

An examination of the record in this case reveals that prior to the time the statement of John Guffey was admitted there was evidence from the redacted tape that Wolf had stated that he "was dealing through John." Samuel Phillips had testified that Wolf told Perry Guffey that "John's got the money and everything you need" and there was earlier testimony by Perry Guffey that he received the key to let himself into the store from John Guffey. Inasmuch as sufficient evidence of a conspiracy was presented before the statement of John Guffey was admitted, we conclude that the trial court properly admitted John's statement under K.S.A. 60-460(*i*).

Next, defendant claims that the State failed to establish a conspiracy to commit arson between the dates charged by the State in the bill of particulars. The bill of particulars alleged that the conspiracy was formed between March 1 and April 8 of 1978, and that the arson of Mr. Larry's Inc. occurred between 11:30 p.m. April 16, 1978 and 2:25 a.m. April 17, 1978. The testimony indicated that it was mid to late March when Perry Guffey and Samuel Phillips agreed to participate in the plan and that the first attempts were made in furtherance of the conspiracy in early April. We are convinced that there was sufficient evidence from which an impartial factfinder could have found the defendant guilty beyond a reasonable doubt as alleged in the bill of particulars. *State v. Everson*, 229 Kan. 540, 626 P.2d 1189 (1981).

Finally, defendant maintains that the trial court erred when it granted a motion for a new trial as to the arson count but denied the motion as to the conspiracy count. The court granted the motion on the basis of newly discovered evidence consisting of fire department records showing the time the fire department received the alarm of the fire at Wolf's store and when it arrived at the scene. There had been testimony that the fire department arrived at 2:00 a.m. but the records discovered after trial revealed that the fire department had in fact arrived at 2:28 a.m. Since defendant had theorized that lightning which struck in the vicinity of the store at approximately 1:53 a.m. had caused the fire,

the timing of the blaze was critical to defendant's defense to the arson. Moreover, the jury's questions during deliberation showed their concern for the time element of the fire and that this concern related to reasonable doubt as to the cause of the fire. For this reason the trial court granted a new trial on the arson count.

Defendant contends that a new trial should have been granted on the conspiracy count was well because the newly discovered evidence bore on the credibility of one of the State's prime witnesses and because the failure to reveal the records before trial breached the prosecutor's duty to turn over exculpatory material under *Brady v. Maryland,* 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 (1963).

A new trial should not be granted on the ground of newly discovered evidence unless the evidence is of such materiality that it would be likely to produce a different result upon retrial. *State v. Andrews,* 228 Kan. 368, 376, 614 P.2d 447 (1980). Here the time element in regard to the fire department's response does not affect the proof of a conspiracy to commit arson except that it would weigh against the credibility of Perry Guffey, who testified that he had started the fire. However, a new trial is not granted on the basis of newly discovered evidence which tends merely to impeach or discredit the testimony of a witness. *State v. Foy,* 224 Kan. 558, 569, 582 P.2d 281 (1978).

Defendant's argument regarding the State's failure to turn over the new evidence at an earlier date is similarly uncompelling. The newly discovered fire department records turned up under very unusual circumstances after both State and defense attorneys had diligently searched the fire department files. There was no bad faith exhibited by the prosecutor and he did not knowingly withhold the records; therefore, the following "oversight" rules must be applied:

"When the withholding of evidence by the prosecution is not deliberate and in bad faith and when the prosecution has not refused to honor a request for the evidence made at a proper stage of the proceedings, the defendant should be granted a new trial only if the record establishes: (1) that evidence was withheld or suppressed by the prosecution, (2) that the evidence withheld was clearly exculpatory, and (3) that the exculpatory evidence withheld was so material that the withholding of the same from the jury was clearly prejudicial to the defendant." *State v. Kelly,* 216 Kan. 31, 36, 531 P.2d 60 (1975).

Evidence materially affecting the credibility of a key prosecution witness may be termed exculpatory. *Kelly,* 216 Kan. at 36-37.

However, the suppression or withholding of mere cumulative evidence is not violative of the rule; the evidence must be sufficiently material on the ultimate question of guilt or innocence to have played a determinative role in the outcome of the trial. *State v. Hombeak,* 221 Kan. 397, 403, 559 P.2d 385 (1977).

There was sufficient evidence in this case of a conspiracy between defendant and the Guffey brothers to burn defendant's store even absent Perry's testimony. The testimony of Samuel Phillips and the admissions recorded in Exhibit 13 revealed both a plan to commit arson and the steps taken in furtherance of that plan. Furthermore, while the evidence bearing on the timing of the fire may have raised doubts about Perry's credibility, that credibility had already been extensively questioned on cross-examination in connection with his criminal record and motivation for testifying.

We conclude that the evidence included in the fire department records was not so material to the conspiracy conviction as to require a new trial.

Affirmed.