No. 52,508

STATE OF KANSAS, *Appellee,* v. CHESTER IRVING, *Appellant.*

(644 P.2d 389)

Opinion filed May 8, 1982.

*Kiehl Rathbun,* of Wichita, argued the cause and was on the brief for the appellant. Chester Irving, pro se, was on the supplemental brief.

*Roger C. Kidd,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Clark V. Owens,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal from convictions of aggravated burglary (K.S.A. 21-3716), two counts of aggravated rob-

bery (K.S.A. 21-3427), and two counts of kidnapping (K.S.A. 21-3420). This case arose out of the armed robbery of a private residence in Wichita on January 20, 1980. The evidence showed that on that date at about 7:30 p.m. Bobby Joe Carr and Billy Hill robbed the owner of the residence and her daughter at gunpoint, tied them up, and confined them to one of the rooms. Hill and Carr then left the residence in a car stolen from the home and drove to a shopping center where they met defendant, Chester Irving. There the stolen car was abandoned. The defendant, acting as wheelman, then drove Hill and Carr to the Executive Inn motel where the proceeds of the robbery were sorted and divided among the parties. The police, having been previously made aware of the robbery by an informant, appeared at the motel where Hill and Carr were arrested. Two days later on January 22, 1980, defendant Irving's car was searched and a pistol and some jewelry taken in the robbery were recovered. Defendant Irving was actually charged as a participant in the crime on February 20, 1980, although in the intervening period he had employed counsel in anticipation of the charge.

The facts in this case are somewhat unusual because of the involvement of Francis Edward Calvert, an informant and agent of the district attorney's office. The evidence showed that on January 19, 1980, the day before the robbery, Hill and Carr had a conversation with Calvert and told him of their plans and intentions regarding the robbery. Calvert promptly notified the police authorities of the impending robbery. Following the robbery, Calvert advised the police that the robbery had been completed and he directed the police to the Executive Inn motel where Hill and Carr were arrested. In the conversation with Hill and Carr, Calvert was advised that defendant Chester Irving was to participate in the crime as wheelman by furnishing the transportation discussed above.

On January 21, 1980, Calvert telephoned defendant Irving and engaged him in conversation. The purpose of the telephone call was to obtain information from Irving regarding his knowledge of and participation in the robbery. It was undisputed that, when the telephone call was made, Calvert had been serving as an informant and agent for the Sedgwick district attorney's office for several months, and Calvert was aware that the defendant had employed counsel when the telephone call was made although he

had not yet been charged with the crime. The telephone conversation between Calvert and Irving was taped by Calvert. This tape contained damaging admissions by Irving which established his participation in the robbery. This taped conversation was admitted into evidence and played to the jury at the trial where Irving was convicted.

At the trial, the evidence of guilt presented by the prosecution witnesses was overwhelming. Carr testified fully as to defendant's participation in the robbery. Calvert, the informant, testified as to his conversation with the defendant and the tape of the incriminating conversation was played to the jury. Additionally, the pistol and jewelry stolen in the robbery and recovered from Irving's car were admitted into evidence. It is fair to state that the admission of the tape of defendant's voice in which he discussed his participation in the robbery was devastating to the defense. The case for the defense consisted primarily of the testimony of Billy Hill, who denied defendant's participation in the robbery. The other evidence presented by the defense shed little light on the circumstances of the crime. As could be expected under these circumstances, the jury found defendant Irving guilty as charged. The defendant has appealed to this court claiming trial errors.

The defendant's first point on the appeal is that the trial court erred in unduly restricting defense counsel in his cross-examination of the witness, Calvert. Specifically, the trial court refused to allow defense counsel to elicit from Calvert his present address and the fictitious name he was then using. It appeared that Calvert was a participant in the Federal Witness Reidentification Program and had been relocated with a new identity in order to protect him from criminal elements because of his undercover work. The court, in its discretion, decided that such inquiry would not be appropriate under the circumstances. Calvert's previous criminal record and the fact that he was a paid informant were clearly presented to the jury. The evidence indicated that Calvert's assumed name and present location could not be revealed if he was to be protected from extinction. The rule in Kansas is that it is within the discretionary power of the trial court whether to compel a witness to reveal his identification and location where undercover work has been involved. *State v. Hutchinson*, 222 Kan. 365, 368, 564 P.2d 545 (1977); *State v. Burgoon*, 4 Kan. App. 2d 485, 488, 609 P.2d 194, *rev. denied* 228

Kan. 807 (1980). Under all of the circumstances, we find that the trial court did not abuse its discretion in limiting the cross-examination of Calvert.

The defendant next contends that the trial court erred in admitting into evidence the taped conversation between defendant and the informant, Calvert, held on January 21, 1980. The tape of the conversation was played for the jury over objection by defense counsel during the direct examination of Calvert. In his motion to suppress the tape, the defendant stated that he had employed counsel in anticipation of being charged with the crime and that Calvert knew defendant had counsel. The telephone conversation between Calvert and defendant took place the day following the commission of the crime. Calvert at that time was and for several months had been a paid informant and agent for the Sedgwick district attorney's office. The evidence indicated that Calvert had not been specifically directed by the district attorney or federal authorities to tape a conversation with Irving, and, in fact, had received no specific instructions as to the crime involved in this case.

Defendant first maintains that the taped conversation was inadmissible because its admission deprived the defendant of his constitutional right to counsel as guaranteed under the Sixth Amendment to the United States Constitution. Defense counsel, in substance, argues that, since the State through Calvert was aware that defendant was represented by counsel at the time the telephone conversation was recorded, the prosecutor was required to inform Irving's counsel prior to any questioning by a government agent. In support of his position, the defendant relies on *Massiah v. United States,* 377 U.S. 201, 12 L.Ed.2d 246, 84 S.Ct. 1199 (1964), and *State v. McCorgary,* 224 Kan. 677, 585 P.2d 1024 (1978). It should be noted that in both *Massiah* and *McCorgary* the defendant had actually been charged with the offense at the time the defendant's conversation with the police informant was recorded. In the case now before us Irving had not been charged with any crime at the time the conversation with Calvert was recorded. Furthermore, Calvert had not been given instructions to tape a conversation with Irving but indirectly got information about Irving's participation in the crime while seeking to obtain evidence to convict another well-known criminal in Sedgwick County.

The rule is now well established that the right to counsel under the Sixth Amendment does not attach prior to the initiation of adversary judicial proceedings against an accused. *Kirby v. Illinois,* 406 U.S. 682, 688, 32 L.Ed.2d 411, 92 S.Ct. 1877 (1972). Where a case is still in the investigative stage, or in the absence of a person being charged, arrested, or indicted, such adversary proceedings have not yet commenced, and thus no right to counsel has attached. In the recent case of *United States v. Kenny,* 645 F.2d 1323 (9th Cir.), *cert. denied* 101 U.S. 3059 (1981), the factual circumstances were quite similar to those in the present case. It was held that a tape recording of the conversation was admissible since the right to counsel did not attach prior to the initiation of adversary judicial proceedings. The rule in *Kenny* is supported by our own decisions in *State v. McConico,* 4 Kan. App. 2d 420, 426, 607 P.2d 93 (1980), and *State v. Estes,* 216 Kan. 382, 385, 532 P.2d 1283 (1975). We hold that the taped conversation between defendant and Calvert was not barred by the Sixth Amendment guarantee of the right to counsel.

Defendant next contends that the taped conversation was not admissible because it was obtained in violation of DR 7-104(A)(1) (228 Kan. cxv) of the Code of Professional Responsibility, which provides as follows:

"DR 7-104 *Communicating With One of Adverse Interest.* (A) During the course of his representation of a client a lawyer shall not:

"(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."

Defendant argues that the prosecutor, through his agent Calvert, made a prohibited direct contact with Irving, whom Calvert knew was represented by counsel. Hence, the product of misconduct, the tape, should have been excluded at the trial. This same point was raised under similar circumstances in *United States v. Kenny* and rejected. *Kenny* followed *United States v. Lemonakis,* 485 F.2d 941, 955-56 (D.C. Cir. 1973), *cert. denied* 415 U.S. 989 (1974), and held that, in view of the noncustodial environment, prior to the defendant's charge, arrest, or indictment, there was no violation of DR 7-104(A)(1). In the court's view, the government's use of such investigative techniques at this stage of a criminal matter did not implicate the ethical problems addressed by the code. For a similar holding, see *State v. Wolf,* 7 Kan. App. 2d 398,

643 P.2d 1101 (1982). We have concluded, in accordance with the rationale of *Kenny,* that the admission of the taped conversation in this case was not precluded by DR 7-104(A)(1) of the Code of Professional Responsibility. *United States v. Thomas,* 474 F.2d 110 (10th Cir. 1972), cited by defendant, is not applicable here, because in *Thomas* the interview of the defendant by the government agent took place *after* defendant was charged and counsel had been appointed to represent him.

In his supplemental brief, the defendant argues that the taped recording should have been excluded under the provisions of K.S.A. 22-2514 *et seq.,* which restricts the wiretapping of telephones and other wire communication facilities. In *State v. Farha,* 218 Kan. 394, 544 P.2d 341 (1975), the legal background and history of wiretapping or, as it has sometimes been called, "eavesdropping," is discussed in depth. The primary and controlling statute is Title III of the Omnibus Crime Control and Safe Streets Act of 1968, codified in 18 U.S.C. § 2510 *et seq.* All state statutes, including the Kansas statutes, must conform to that federal statute. As noted in *Farha,* "a State statute would be preempted where the State law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." The federal statute found at 18 U.S.C.A. § 2511 (2)(c) and (d) (1970) specifically provides as follows:

"(c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

"(d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act." p. 472.

In *United States v. Turk,* 526 F.2d 654 (5th Cir. 1976), it was held that, although the action of a party to a telephone conversation in recording the conversation with the defendant was an interception within the statutory definition of the federal act, it was not violative of the act in view of 18 U.S.C.A. § 2511 (2)(d) which specifically exempts situations in which one party to the conversation is himself the interceptor. The Kansas statute, K.S.A. 22-2515, provides in part as follows:

"22-2515. Order authorizing eavesdropping; persons authorized to make application; crimes for which order may be issued; disclosure and use of contents of wire or oral communications; effect on privileged communications. . . .

. . . . .

"(3) Any investigative or law enforcement officer who, by any means authorized by this act or by chapter 119 of title 18 of the United States code, has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may use such contents to the extent such use is appropriate to the proper performance of his or her official duties.

"(4) Any person who has received, by any means authorized by this act or by chapter 119 of title 18 of the United States code or by a like statute of any other state, any information concerning a wire or oral communication, or evidence derived therefrom, intercepted in accordance with the provisions of this act, may disclose the contents of such communication or such derivative evidence while giving testimony under oath or affirmation in any criminal proceeding in any court, or before any grand jury, of this state or of the United States or of any other state."

It is important to note that, under these sections, any information or evidence derived from a telephone conversation which was obtained by any means authorized by chapter 119 of title 18 of the United States Code (which would include 18 U.S.C. § 2511 [2][c] and [d]) is admissible in any criminal proceeding in Kansas. Applying those sections to the factual circumstances in the case at bar, it follows that the taped communication between Calvert and defendant Irving was admissible under both the federal wiretapping statute and the Kansas statute, K.S.A. 22-2515, since Calvert was one of the parties to the telephone communication and thus outside the prohibition of those statutes.

This same result was reached in the recent case of *State v. Johnson,* 229 Kan. 42, 45, 621 P.2d 992 (1981), where this court held that K.S.A. 1979 Supp. 22-2516 was not applicable, since the taped conversation between the defendant and his wife was made with the knowledge, consent, and cooperation of defendant's wife, a party to the conversation. For the reasons set forth above, we have concluded that the taped conversation between the informant, Calvert, and defendant Irving was admissible and was not barred under the provisions of the Kansas wiretapping statutes (K.S.A. 22-2514 *et seq.*).

The defendant next maintains that the trial court erred in refusing defendant the right to waive his right to counsel and to proceed pro se in his own defense, relying on *Faretta v. Califor-*

*nia,* 422 U.S. 806, 45 L.Ed.2d 562, 95 S.Ct. 2525 (1975). In *Faretta,* the defendant unequivocally advised the court weeks before the trial that he wanted to represent himself and that he did not want counsel. It was held that it was error to deny him that right. The record in the present case discloses that at no time did the defendant request the right to proceed pro se. Defendant did complain on the record as to the performance of his attorney, and his attorney asked leave to withdraw during the testimony of the final defense witness. The trial court, in its discretion, denied the motion under the circumstances. The court noted that the defendant's attorney had done a good job and that counsel would not be permitted to withdraw at that stage of the trial. There was no showing that the attorney-client relation had deteriorated to the point where appointed counsel could no longer give effective aid in providing a defense. *State v. Banks,* 216 Kan. 390, 532 P.2d 1058 (1975); *State v. Henderson,* 205 Kan. 231, 468 P.2d 136 (1970). Under the circumstances, since no good cause for permitting the withdrawal was shown and since the defendant at no time requested the right to proceed pro se, we find no abuse of discretion by the trial court.

The defendant complains of a number of alleged trial errors in the rulings of the trial court pertaining to the cross-examination of certain witnesses, the failure of the prosecutor to correct certain statements made by Calvert, and the failure of the court to strike from the evidence certain statements in the testimony of deputy district attorney Connolly. The jury was fully informed as to the extensive criminal records of Calvert, Carr, and Hill. Calvert and Carr admittedly were testifying because of promises made to them of either immunity or reduced prosecution. Although the trial court did not compel the prosecutor to disclose fully Calvert's financial arrangements with the federal authorities for serving as an informant, the evidence indicated Calvert was being paid $20 per day and that, in exchange for his testimony, the State had agreed to dismiss a robbery charge. In view of the tape recording containing defendant's admissions of his participation in the crime, we are convinced that none of these matters could have influenced the outcome of the trial in any event.

The defendant next complains that the trial court erred in giving its instruction No. 17, the so-called "Allen instruction." The instruction given was based upon PIK Crim. 68.12 (1971)

and was given at the same time as the other instructions in the case. In *State v. Scruggs,* 206 Kan. 423, 479 P.2d 886 (1971), this court approved a similar instruction when given prior to the commencement of the deliberations of the jury. We find no error in this regard.

The defendant's final point is that the trial court abused its discretion in sentencing defendant on the four counts to a combined term of 150 years to life. Prior to imposition of sentence, the prosecutor invoked the habitual criminal act (K.S.A. 21-4504[2]). In its motion to invoke the act, the State directed the court's attention to the fact that defendant Irving had been previously convicted of burglary, receiving stolen property, aggravated weapons violations, unlawful possession of a firearm, second-degree burglary, larceny, and aggravated robbery. These prior felonies occurred during the years from 1967 through 1974. The trial court made the four sentences run consecutively. We note that the defendant did not include in the record on appeal the transcript of the sentencing proceedings. There is no evidence in the record of mitigating circumstances which would justify this court in holding that the sentences imposed constituted an abuse of discretion by the trial court. We, therefore, find no error on this point.

The judgment of the district court is affirmed.