(176 P.3d 245)

No. 96,627

STATE OF KANSAS, *Appellee*, v. JOSEPH B. ANDREWS, *Appellant*.

Opinion filed February 15, 2008.

*Bob L. Thomas*, of The Law Offices of Bob L. Thomas, LLC, of Olathe, for appellant.

*Steven J. Obermeier*, assistant district attorney, *Phill Kline*, district attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before GREENE, P.J., MCANANY, J., and LARSON, S.J.

LARSON, J.: This is Joseph B. Andrews' direct appeal of the district court order denying his motion to suppress evidence. Andrews contends the Johnson County Sheriff's Department violated Kansas' wiretapping statutes, K.S.A. 22-2514 *et seq.*, when it recorded and subsequently listened to his outgoing telephone calls from the Johnson County Adult Detention Center without first obtaining judicial approval for such actions.

The facts in this case are not in dispute. In March 2005, Andrews was stopped by Leawood police while driving a 1994 Chevrolet truck pulling a Jayco Eagle travel trailer. He was arrested on an outstanding Lenexa city warrant and placed in the Johnson County Adult Detention Center (hereinafter jail). Investigators learned the truck and trailer had been stolen in Missouri, resulting in Andrews being charged with two counts of felony theft in violation of K.S.A. 21-3701.

While he was in jail, Andrews made numerous telephone calls to his girlfriend, Pamela Harless, on the jail's Evercom phone system. These conversations were recorded by the Evercom system; later, members of the Johnson County Sheriff's Department listened to the calls. During the conversations, Andrews told Harless that there were "dope" and "guns" in the trailer.

Utilizing this information, the sheriff's department obtained a search warrant for the trailer where officers discovered marijuana and a Remington 870 H shotgun. Andrews was then charged with criminal possession of a firearm in violation of K.S.A. 21-4204 and possession of marijuana in violation of K.S.A. 65-4162.

Andrews filed a motion to suppress the phone conversations and evidence derived therefrom, arguing the recordings were obtained utilizing an illegal wiretap in violation of K.S.A. 22-2514 *et seq.*

A hearing on the motion to suppress was held where Sergeant Michael Pfannenstiel of the Johnson County Sheriff's Department testified that Evercom had been utilized to monitor phone calls since July 2003. The primary reason for using the Evercom system is to assist in maintaining the security of the jail.

Pfannenstiel described the Evercom system in detail. He testified that the jail handbook which was available to Andrews dis-

cusses the phone monitoring system and advises that calls are recorded. There are also visual warnings to the prisoners. Signs are posted with red lettering, stating: "All calls from inmate telephones are subject to monitoring recording. If you use the telephone, you are agreeing to the monitoring and recording, and if you do not agree, you may utilize U.S. mail or the inmate visitation program."

Pfannenstiel further testified that when a prisoner institutes a call, directions are given in English or Spanish for a choice between using a jail card or making a collect call. Regardless of the choice, when the recipient of the call answers within 5 to 15 seconds, a female voice interrupts the conversation and informs both parties that the call is being recorded. The maximum time for a phone call is 15 minutes, and during that time, the voice will interrupt three to four times to again inform the parties that the call is being recorded.

Pfannenstiel said that once he learns a prisoner may be using Evercom to conduct criminal activity, he listens to the recorded conversations of that inmate. While listening to Andrews' conversations, he heard both incriminating statements about criminal activity and statements by Andrews acknowledging the fact he knew he was being recorded.

The district court ruled that Andrews, by using the jail phones, consented to his conversations being recorded and listened to. Fair warnings were given to inmates, and there was no reasonable expectation of privacy. There was not a statutory violation in light of the valid consent. The motion to suppress was denied.

Andrews was convicted of two counts of felony theft and one count of criminal possession of a firearm at a bench trial based on stipulated facts, with the usage of the recorded conversation objection being continued, recognized, and denied. Andrews was sentenced and now timely appeals.

The single appellate issue for our consideration is Andrews' claim that the trial court erred in denying his motion to suppress and allowing the State to use recordings of conversations which he claims is a violation of the Kansas statutes prohibiting illegal wiretapping.

"In reviewing a district court's decision regarding suppression, [an appellate] court reviews the factual underpinnings of the decision by a substantial competent evidence standard and the ultimate legal conclusion by a de novo standard with independent judgment. This court does not reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. [Citation omitted.]" *State v. Ackward*, 281 Kan. 2, 8, 128 P.3d 382 (2006).

When material facts to a trial court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006). In addition, because the central questions in this case concern the interpretation of a statute, appellate review is unlimited. See *State v. Lewis*, 263 Kan. 843, 847, 953 P.2d 1016 (1998).

The Kansas wiretapping statutes are found in K.S.A. 22-2514 *et seq.* Under the definition of K.S.A. 22-2514(1) and (17), the conversations of Andrews would be deemed to be an aural transfer being made by a wire communication and subject to the provisions of the Act, including K.S.A. 22-2517 which states:

"Whenever any wire . . . communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing or other proceeding in or before any court . . . if the disclosure of such information would be a violation of this chapter."

In our case, the information received from the recording of Andrews' conversations may be utilized because of the language of K.S.A. 22-2515(c) and (d), which states:

"(c) Any investigative or law enforcement officer who, by any means authorized by this act or by chapter 119 of title 18 of the United States code, has obtained knowledge of the contents of any wire, oral or electronic communication, or evidence derived therefrom, may use such contents to the extent such use is appropriate to the proper performance of such officer's official duties.

"(d) Any person who has received, by any means authorized by this act or by chapter 119 of title 18 of the United States code or by a like statute of any other state, any information concerning a wire, oral or electronic communication, or evidence derived therefrom, intercepted in accordance with the provisions of this act, may disclose the contents of such communication or such derivative evidence while giving testimony under oath or affirmation in any criminal proceeding in any court, or before any grand jury, of this state or of the United States or of any other state."

Chapter 119 of Title 18 of the United States Code includes 18 U.S.C. § 2511(2)(c) (2000), which states: "It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or *one of the parties to the communication has given prior consent to such interception.*" (Emphasis added.)

Andrews again argues on appeal that the only way the intercepted communications may be utilized is where an ex parte court order has been obtained under K.S.A. 22-2515. A review of our previous Kansas decisions does not support this argument, and no Kansas case has been presented to us to require such a holding. The issue of consent of one of the parties was deemed to be applicable and in another case the communication was not covered by the applicable statutes.

*State v. Irving*, 231 Kan. 258, 644 P.2d 389 (1982), involved a defendant making incriminating statements over the phone to a police informant regarding his knowledge of and participation in a robbery. Without the defendant's knowledge or consent, the informant recorded the conversation, it was admitted as evidence, and played to the jury which found the defendant guilty.

On appeal, the defendant argued that the recording should have been held inadmissible under the provisions of K.S.A. 22-2514 *et seq.* The court, after reviewing K.S.A. 22-2515(3) and (4) (Weeks) (now K.S.A. 22-2515[c] and [d]), held that "any information or evidence derived from a telephone conversation which was obtained by any means authorized by chapter 119 of title 18 of the United States Code (which would include 18 U.S.C. § 2511[2][c] . . .) is admissible in any criminal proceeding in Kansas." 231 Kan. at 264. Because the informant was one of the parties to the conversation, the conversation was not protected by either the federal or Kansas wiretapping statutes. 231 Kan. at 264; see *State v. Roudybush*, 235 Kan. 834, 845, 686 P.2d 100 (1984).

The same result was reached in *State v. Johnson*, 229 Kan. 42, 44-45, 621 P.2d 992 (1981), where the court held the Kansas wiretapping statutes did not prevent a taped conversation between the defendant and his wife from being admitted into evidence because

the recording was made with the knowledge, consent, and cooperation of the defendant's wife, a party to the conversation.

The crux of the district court's decision in our case was based on Andrews' consent having been given based on all the warnings in the case. In our case, there was a warning in the inmate handbook and several signs within the jail that stated by using the phone, Andrews agreed to his calls being monitored and recorded, and if he did not agree, he could utilize the United States mail or inmate visitation program. In addition, there were repeated warnings during the conversations. And, Pfannenstiel testified that when he listened to the conversations, he heard Andrews acknowledge the fact that he was being recorded.

Simply stated, K.S.A. 22-2514 *et seq.* was not violated when Andrews' jailhouse phone conversations were utilized to obtain the search warrant because, as a party to the conversations, Andrews consented to the sheriff's department recording and monitoring them.

This result is supported by the conclusion reached in *State v. Riley*, 287 Wis. 2d 244, 704 N.W.2d 635 (Wis. App. 2005), where the Wisconsin Electronic Surveillance Control Law (WESCL), a statute that mirrors the language of 18 U.S.C. § 2511(2)(c), was applied. In *Riley*, the defendant, while in jail, made several calls to a friend, asking him to move the defendant's car before the police had an opportunity to search it and discover the drugs it contained. The defendant, like all inmates making calls, heard a recording of a voice stating the call may be recorded.

Because WESCL, like K.S.A. 22-2514 *et seq.*, is patterned after Title III of the federal Omnibus Crime Control and Safe Streets Act of 1968, see *State v. Farha*, 218 Kan. 394, 398, 544 P.2d 341 (1975), the *Riley* court reviewed federal circuit court cases applying the consent exception of 18 U.S.C. § 2511(2)(c) in prison settings. The *Riley* court determined that the federal circuit courts "have overwhelmingly concluded that an inmate has given implied consent to electronic surveillance when he or she is on notice that his or her telephone call is subject to monitoring and recording and nonetheless proceeds with the call." 287 Wis. 2d at 251.

In discussing what meaningful notice that telephone calls over institutional phones are subject to surveillance constitutes implied consent to such surveillance, the Wisconsin court stated:

"Meaningful notice may include a signed acknowledgment form, an informational handbook or orientation session, a monitoring notice posted by the outbound telephone, or a recorded warning that is heard by the inmate through the telephone receiver, prior to his or her making the outbound telephone call. See *Footman*, 215 F.3d at 154 (signed form, notices on phones and prerecorded messages played when phone calls placed); *Amen*, 831 F.2d at 379 (federal prison regulations, orientation lecture, informational handbook and signs posted); *Willoughby*, 860 F.2d at 20 (orientation lecture, signs posted, signed form); *Workman*, 80 F.3d at 693 (posted signs, orientation handbook and signed form); *Hammond*, 286 F.3d at 191-92 (handbook, consent form, orientation lesson, and notices posted near phones); *Horr*, 963 F.2d at 1126 (orientation handbook and lesson, consent form, posted signs); *Van Poyck*, 77 F.3d at 292 (posted signs, consent form and prison manual); *People v. Kelley*, 127 Cal. Rptr. 2d 203, 206-07 (Ct. App. 2002) (citing federal cases for proposition that meaningful notice would include a monitoring notice posted by a phone '*or a recorded warning that is heard by the inmate*') (emphasis added; citation omitted)." 287 Wis. 2d at 253-54.

It is clear that Andrews consented to the monitoring of his telephone calls because of the "meaningful notice" given by the orientation handbook, numerous notices stating consent was given when a call was made, and the warnings during the telephone calls.

The trial court correctly held that consent was given by Andrews. K.S.A. 22-2515(c) and (d) apply to this case and uphold the right to monitor Andrews' calls. His phone conversations were properly utilized to obtain a search warrant. The motion to suppress was properly denied.

Affirmed.