No. 46,661

STATE OF KANSAS, *Appellee,* v. WILLIAM E. WIGLEY, *Appellant.*

(502 P. 2d 819)

Opinion filed November 4, 1972.

*Chester I. Lewis,* of the firm of Lewis & Davis, of Wichita, argued the cause, and was on the brief for the appellant.

*Keith Sanborn,* county attorney, argued the cause, and *Vern Miller,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendant, William E. Wigley, was convicted of selling a narcotic drug, which is a felony, and of possessing barbiturates, a misdemeanor. He was sentenced to a term of from one to ten years on the felony charge and one year in jail on the misdemeanor, the sentences to run concurrently.

Two points, only, are argued on appeal: First, that the trial court erred in admitting a tape recording of a telephone conversation between the defendant and an informer, or undercover agent, for the Federal Bureau of Narcotics, and second, that the trial court erred in refusing to allow the defendant to examine the report of a prosecution witness.

The facts with respect to the first point are as follows: On October 26, 1970, the informer, a man by the name of Froniabarger and two federal agents, Leap and Ingram, met in a Kansas City, Missouri, motel room where a call was placed to Wigley at his barber shop in Wichita. A recording device was attached to the phone from which the call was made and both ends of the conversation were recorded. Froniabarger, who talked with the defendant, was aware of the device and had consented to its being used to record the conversation. During the conversation, Froniabarger agreed to wire the defendant $680 with which to buy an airplane ticket and to "cop a piece" for him. The record indicates that in the nefarious drug trade the term "cop" means to purchase various types of drugs and that "piece" refers to an ounce of heroin or cocaine, or whatever drug is being dealt with. A recording of this telephone conversation was admitted in evidence over the defendant's objection.

On October 29, 1970, another telephone call was placed to the wayward Mr. Wigley at his barber shop, and Froniabarger again talked with him. While this call was electronically recorded, its contents are not disclosed by the record. Following this call, Froniabarger and a third agent, Klick, flew to Wichita where the purchase of heroin was made.

At the outset it may be said that the defendant concedes no federal question is involved in his first point. On page 7 of his brief, he states:

"Under a very recent federal case, *United States v. White,* supra, the tape recording of the telephone conversation in question would have been permissable [sic], and the government agents could have proceeded with a Federal

prosecution under the Federal criminal narcotic statutes to-wit: *26 U.S.C. sec. 4705 (a) and 21 U.S.A. sec. 174, ."*

The question remains: Has Kansas law been violated? The defendant insists that it has; that the recording of his telephone conversation with the undercover agent was in violation of K. S. A. 1971 Supp. 21-4001 and 21-4002. The pertinent portions of these statutes read:

"21-4001. (1) Eavesdropping is knowingly and without lawful authority:

. . . . . . . . . . . . . . .

"(c) Installing or using any device or equipment for the interception of any telephone, telegraph or other wire communication without the consent of the person in possession or control of the facilities for such wire communication."

"21-4002. (1) Breach of privacy is knowingly and without lawful authority:

"(a) Intercepting, without the consent of the sender or receiver, a message by telephone, telegraph, letter or other means of private communication;
. . ."

This appeal presents us with our first opportunity to consider or construe these two statutes. Both were enacted by the 1969 legislature as part of the Kansas Criminal Code which became effective July 1, 1970, and both offenses are Class A misdemeanors. Notes of the Judicial Council which drafted the Kansas Criminal Code, indicate that 21-4001 is similar to the Model Penal Code, 250.12 (1) and that the Model Penal Code, 250.12 (2) was drawn upon in drafting 21-4002.

As we read these statutes together—although they will require separate analysis—their general import is to protect the privacy of communication between individuals. Yet, we apprehend that society also has an interest in seeing that, in the administration of justice, the law seek out the best and most reliable information. This concept appears to have been given recognition through the consent features imbedded in the statutes.

K. S. A. 1971 Supp. 21-4002 (1) (a) forbids the interception of messages without the consent of the sender or receiver. In this respect the statute closely parallels Title III, Omnibus Crime Control and Safe Streets Act, 82 Stat. 212, 18 U. S. C. § 2511. Thus we consider the court's decision in *United States v. White,* 401 U. S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122, as being pertinent to our problem.

In the *White* case, government agents had monitored certain conversations between the defendant and a government informer, the latter having been "wired for sound", that is he carried a radio

transmitter concealed on his person. In an opinion holding there was no violation of Fourth Amendment rights, Mr. Justice White wrote:

"Concededly a police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights. *Hoffa v. United States,* 385 U. S., at 300-303. For constitutional purposes, no different result is required if the agent instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person, *Lopez v. United States, supra;* (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency. *On Lee v. United States, supra.* If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.

". . . An electronic recording will many times produce a more reliable rendition of what a defendant has said than will the unaided memory of a police agent. It may also be that with the recording in existence it is less likely that the informant will change his mind, less chance that threat or injury will suppress unfavorable evidence and less chance that cross-examination will confound the testimony. Considerations like these obviously do not favor the defendant, but we are not prepared to hold that a defendant who has no constitutional right to exclude the informer's unaided testimony nevertheless has a Fourth Amendment privilege against a more accurate version of the events in question.

". . . Our opinion is currently shared by Congress and the Executive Branch, Title III, Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 212, 18 U. S. C. § 2510 *et seq.* (1964 ed., Supp. V), and the American Bar Association. Project on Standards for Criminal Justice, Electronic Surveillance § 4.1 (Approved Draft 1971). It is also the result reached by prior cases in this Court. *On Lee, supra; Lopez v. United States, supra.*" (pp. 751-753.)

Sections 4.1 and 4.2 of the American Bar Standards relating to Electronic Surveillance, to which reference is made in the *White* case, read as follows:

"4.1 The use of electronic surveillance techniques by law enforcement officers for the overhearing or recording of wire or oral communications with the consent of one of the parties should be permitted.

"4.2 The techniques should be so employed by law enforcement officers that the recording will be insofar as practicable complete, accurate and intelligible."

In the commentary commencing on page 124 of the approved draft of the Standards relating to Electronic Surveillance, the Advisory Committee notes read in part:

"This standard reflects the prevailing law (citing cases). It recognizes the validity of the use of electronic surveillance techniques for overhearing or recording conversations with the consent of one party in the administration of justice. It does not suggest that their use for this purpose should be circumscribed by a warrant procedure or otherwise be similarly limited. We recognize that another rule might ultimately prevail. . . .

. . . . . . . . . . . .

". . . [W]here informants, whose credibility may be suspect, are used, see, e. g., Osborn v. United States, 385 U. S. 323 (1966) . . . every effort should be made to record the conversations through the best available means. For a recording will reproduce the very words spoken with all the added significance that comes from inflection, emphasis and the other aspects of oral speech. See State v. Reyes, 209 Ore. 595, 308 P. 2d 182 (1957). The goal of finding the truth in the criminal trial demands no less. The defendant, too, has a stake in the best evidence being presented to the court and jury. Thus, recording as such 'involves no "eavesdropping" whatever in any proper sense of that term.' Lopez v. United States, 373 U. S. 427, 439. It should not be unthinkingly placed in the same category with wiretapping or bugging. . . .

"The crucial issue in any overhearing or recording situation is instead the right of the witness himself to testify. Where he is entitled to testify, there can be no valid objection to the use of an overhearing or recording device, and the introduction of its product at trial. No one should have the right to exclude the testimony of a third party or a recording and 'rely on possible flaws in the [witness's] . . . memory, or to challenge [his] . . . credibility without being beset by corroborating evidence that is not susceptible of impeachment.' Lopez v. United States, 373 U. S. at 439. . . ."

It is noted that the Standard is geared to the use of electronic surveillance by law enforcement officers, which is, of course, what we are dealing with in the instant case. Here, the surveillance was undertaken and carried out by agents of the Federal Bureau of Narcotics whom we recognize as members of the law enforcement fraternity.

From the record in this case we believe it clear there was no breach of K. S. A. 21-4002 (1) (a) which enjoins interception without the consent of either the sender or the receiver. Consent in this case was undoubtedly obtained from the sender, Mr. Froniabarger.

What of the other statute, K. S. A. 1971 Supp. 21-4001 (1) (c)? It is our opinion that no violation of this statute may validly be charged, either. The statute forbids *installing or using* a device for the interception of wire communication without the consent of

the *person in possession or control of the facilities* for such wire communication.

The final clause of the statute "without the consent of the person in possession or control of the facilities for such wire communication" does not appear in either the Model Penal Code, the federal statute or the American Bar Standards, and no help is forthcoming from these sources as to the meaning or construction of the phrase. Consequently, since we have found nothing in the committee notes to assist us, we are left to our own bare-bone resources

Since the statute refers to the *person* in charge of the facilities, not *persons*, it occurs to us that consent of both sender and receiver was not meant to be required. As between the sender and receiver, whose consent was intended? We believe the answer depends upon who is in possession or control of the telephone upon which the device is installed. In the present case, for example, only Froniabarger, at the sender's end, was sufficiently in control of the facilities to permit a recording device to be affixed thereto. It was Froniabarger who initiated the call and was in a position to consent to the installation and use of the recording device, not the unwitting party at the other end of the line.

We are aware that our views are not universally shared. In a recent case, *State ex rel. Arnold v. County Court*, 51 Wis. 2d 434, 187 N. W. 2d 354, on which the defendant relies, the court held that even though the electronic recording of a conversation with the consent of one participant was excepted from statutes which prohibit electronic interception of wire or oral communications, the exception does not authorize the admission into evidence of the fruits of such interceptions. Based on this reasoning, the court held that an electronic recording of a face-to-face conversation was inadmissible in the state's case in chief, even though one of the parties had consented to the recording. Two members of the court dissented, pointing out that the recording of a communication by one of the participating parties is not the equivalent of an outsider's uninvited surveillance, or of the interception of a message en route from dispatcher to intended receiver, a point of view which is ardently advanced by the state in the present case.

The Illinois court in *People v. Kurth*, 34 Ill. 2d 387, 216 N. E. 2d 154, managed to construe the phrase "without the consent of *any* party" to mean "without the consent of *all* parties." In this case, also, two justices dissented in an opinion which appeals to us as being much more sensible.

The defendant calls our attention to K. S. A. 1971 Supp. 22-2513, which provides a procedure by which certain law enforcement officials may obtain an *ex parte* order authorizing eavesdropping under specified conditions, and he suggests that should the state's position, in this case, be sustained, it would be tantamount to abrogating the statute. We do not agree. Many situations might arise under the statutes in question where no consent had been obtained from any party and an order authorizing eavesdropping would be required as outlined in K. S. A. 1971 Supp. 22-2513.

The defendant next contends, as a second ground of error, that the trial court erred in refusing to permit him to examine statements of prosecution witnesses after they had testified. The statutory basis for this claim is found in K. S. A. 1971 Supp. 22-3213, sometimes referred to as the little Jencks Act, after a federal statute commonly known by that name. (71 Stat. 595, 18 U. S. C. 3500.)

In pertinent part the statute provides that after a witness for the state has testified on direct examination, the court, on the defendant's motion, shall order the prosecution to produce any statement of the witness in its hands which relates to the subject of his testimony; if the prosecution claims the statement contains matter unrelated to the subject matter of the witness' testimony, the statement shall be delivered to the court for inspection *in camera* for the excision of those parts which do not relate to the subject matter of the testimony given; and if any portion be withheld from the defendant over his objection and the trial continues to a finding of guilty, the entire text of the statement shall be preserved by the prosecution and, in case the defendant appeals, shall be made available to the appellate court for the purpose of determining whether the trial judge ruled correctly. The statute also defines "statement", but we need not repeat the definition here.

While the present appeal was pending, the defendant filed a motion with this court praying for an order "compelling the County Attorney to submit to the Kansas Supreme Court for review, the statements or reports of Special Agent Harold Leap, pursuant to K. S. A. 22-3213 (3) and pursuant to Statement of Points No. 2." We sustained this motion, and a report of Harold Leap was forwarded to this court, under seal, as directed.

Although the record discloses that Harold Leap testified on behalf of the state at the defendant's trial, it does not show any

motion for an order directing the prosecution to deliver Leap's pretrial statements or reports to the defendant. The record *does* reveal that during the cross-examination of Agent Ingram, who was also a prosecution witness, defense counsel requested a copy of Ingram's statement or report, but no statement made by Leap is shown to have been mentioned at that time.

The record fails even to establish that Agent Leap had ever made a prior statement or report. Be that as it may, however, in the absence of a motion directed to the trial court requesting that Leap's pretrial statements or reports be produced, error cannot well be predicated on the court's failure to order the same delivered to the defendant for his examination and use. Nonetheless, we have examined the report of Mr. Leap which has been furnished us and we fail to see how its withholding can be said to have resulted in prejudice to the defendant's cause.

The judgment of the court below is affirmed.