No. 55,832

STATE OF KANSAS, *Appellee*, v. HOWARD ROUDYBUSH, *Appellant*.

(686 P.2d 100)

Opinion filed July 13, 1984.

*John C. Humpage,* of Humpage, Berger and Hoffman, of Topeka, argued the cause and was on the brief for appellant.

*John D. Watt,* county attorney, argued the cause and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

Cook, District Judge Assigned: This appeal follows defendant's convictions for sale of marijuana and possession of marijuana with intent to sell, both in violation of K.S.A. 1983 Supp. 65-4127b(*b*)(3) and K.S.A. 1983 Supp. 65-4105(*d*). Defendant's pretrial motion to suppress evidence was overruled, as were his later objections after trial to alleged Fourth Amendment violations. These same issues are raised on appeal, along with his claim of multiplicity in the two charges.

Howard Roudybush was convicted of possession of marijuana in the District Court of Pottawatomie County in 1980. Two years later his activities again attracted law enforcement attention. During the week of September 17, 1982, while officers from the Pottawatomie County Sheriff's office were conducting visual surveillance of defendant's property, they observed a number of visitors enter the house, stay a short while and leave with packages. One of the vehicles seen at the Roudybush property was identified as belonging to one Steven Brazzle.

On October 1, 1982, Steven Brazzle reported to the Wamego Police Department for a scheduled meeting with his probation officer. He waited for thirty minutes but after his probation officer failed to arrive, Brazzle started to leave. As he was leaving Brazzle was approached by Gerald Schmidt, an investigator for the sheriff's office, who was previously working on the Roudybush surveillance. Schmidt confronted Brazzle with the allegation Brazzle had "heavy drug traffic" through his apartment. Brazzle denied this and, upon request, consented to a search of his apartment. That search revealed marijuana.

After Brazzle was placed under arrest and read his *Miranda* rights, Schmidt began questioning him about his acquaintance with Howard Roudybush. Only after Schmidt threatened to book Brazzle on the possession charge did Brazzle agree to cooperate. Schmidt explained they needed help to arrest Roudybush for possession of marijuana because they "knew he was dealing, but they couldn't prove it." Brazzle told the officers he knew Roudybush and had been dealing with him since 1979. Brazzle mentioned he had bought marijuana from defendant in the past, knew him to be a large quantity dealer, and had personally seen several pounds of marijuana in Roudybush's house.

At the officers' direction, and after being searched, Brazzle made his first trip to defendant's house to attempt a marijuana buy. Roudybush was not there. Brazzle left a message he would phone at the time Roudybush was expected to return. He joined the officers and returned to the Wamego Police Department. Later, in the presence of the officers, Brazzle phoned Roudybush and asked if he had any "eggs," a code name for marijuana. Brazzle explained over the phone he was having a party the following evening, and made arrangements to return to Roudybush's house for a purchase.

Officers then followed Brazzle to a secluded area in Wamego where they searched him and his vehicle. They found no controlled substances. Brazzle was fitted with a bodypack transmitter to transmit his conversations with Roudybush, which would be recorded by the officers receiving the transmission. He was also given two $20.00 bills, the serial numbers of which were noted by the police. Brazzle returned to his own apartment for his dog, and was again searched by the officers. The entourage proceeded to defendant's house where the officers concealed themselves from view of the house where they could receive Brazzle's transmissions and observe vehicle traffic to the property.

Brazzle's meeting with defendant began around 11:15 p.m. and lasted approximately fifteen minutes. The officers waiting outside were acquainted with Roudybush from his prior arrest, and were able to recognize his voice in the electronic transmission as that of the person conversing with Brazzle. Officer Schmidt later summarized the substance of the transmission:

"There was a large amount of conversation about dogs [Brazzle had previously

purchased his Doberman pinscher pup from defendant] . . . and then at a point there was a conversation where I heard the voice I believed to be Howard Roudybush, talking about dealing in drugs, particularly marijuana, and talking of harvest, and that he had recently harvested his own crop, and that he was going to be selling out of state. That he's now considered one of the bigger dealers in the area. Numerous dealers had been cut out in Manhattan. That although he would be getting some stuff from him that's not marijuana, I believe he said marijuana, or pot, that he wished that Brazzle not tell anyone that he got it from him. That he was keeping it quiet. That this weekend, his homegrown crop was going to be going out of state, that he was going to be getting rid of it. And then he proceeded to show him something, which I heard Brazzle making statements, ooh's and ah's, and then there was talk of how much you want for a fourth. And Roudybush I believe said, $40.00 for an ounce, or something to that effect, and there was more conversation. And there was more conversation about dogs, and shortly thereafter, Brazzle left the residence."

The police officers followed Brazzle to a location two miles west of defendant's residence, and there searched him. They did not find the two $20.00 bills Brazzle had earlier been given, but did find a bag of dried green vegetation which they believed to be marijuana. Brazzle told the officers back at the police station that he had given the $20.00 bills to Roudybush in exchange for the bag of marijuana. Brazzle described the location of marijuana in and around defendant's house.

At approximately 2:00 a.m. on October 2, 1982, Officer Schmidt appeared before District Magistrate O. F. Maskil and requested a search warrant for defendant's home. The transmitted conversation had not yet been transcribed, and the tape recording itself was not played to the magistrate. Schmidt summarized the foregoing events based on his memory. He requested authority to seize marijuana, other controlled substances, drug paraphernalia and equipment, the two marked $20.00 bills, and any other fruits and instrumentalities of the crime. The magistrate found probable cause and issued the search warrant.

The police officers executed the search warrant at 3:30 a.m. After they knocked on defendant's front door and identified themselves, Roudybush attempted to burn a quantity of marijuana in a large woodburning stove. The fire was extinguished and the subsequent search revealed a large quantity of marijuana both in the house and growing on the grounds outside. One of the marked $20.00 bills was found in defendant's billfold.

Defendant was charged with the sale of marijuana occurring

on October 1, and with possession of marijuana with intent to sell, occurring on October 2. A preliminary hearing was held on November 15, 1982. Before trial, defendant moved to suppress his intercepted oral communications with Brazzle, the search warrant and all evidence seized pursuant thereto, on the ground the radio transmission and interception of defendant's oral communications were unlawful and in violation of K.S.A. 21-4001 and K.S.A. 22-2514 *et seq.,* "in that no warrant had been issued purporting to authorize the interception of any oral communications of this defendant." Defendant also argued that if evidence of the illegally intercepted conversation was removed from the affidavit in support of the search warrant, that affidavit would not sufficiently establish probable cause on which to base the warrant; thus the warrant and the evidence seized in its execution should also be suppressed. Defendant's motion was heard and overruled on January 12, 1983. A supplemental motion to suppress was filed January 31 claiming the affidavit lacked evidence establishing the reliability and credibility of informant Brazzle. A memorandum decision filed March 17, 1983, overruled both motions to suppress.

Trial to the court was held on April 15 and 21, 1983. Prior to trial defendant moved the court, pursuant to K.S.A. 22-3216(3), for leave to develop any additional Fourth Amendment violations perceived during the course of the trial. This motion was granted. A motion for judgment of acquittal was made at the close of the State's evidence and was renewed at the close of all evidence. Defense counsel emphasized the inadequacies of the controls used by the State in Brazzle's purchase, and the failure of the State's evidence to prove defendant's guilt. The trial court overruled the motions and found Roudybush guilty of both charges.

On April 29, 1983, defendant filed a motion to exercise and a renewed motion for judgment of acquittal or, in the alternative, motion for new trial. These motions in essence raised all issues previously presented to the court. The post-trial motions were overruled on June 7 and defendant was sentenced to concurrent terms of four to ten years in prison. This appeal followed.

Defendant's first claim on appeal is that the State's electronic interception of the conversation occurring inside his home was a violation of K.S.A. 21-4001(1)(*a*) and (1)(*b*), and could not law-

fully be used to obtain the search warrant. Or, put another way, does an electronic interception by police officers of a private conversation held within the home of a suspect, secured without judicial approval but with the cooperation and consent of a police informant who was a party to the conversation, violate the statutory proscription against eavesdropping? Defendant's argument, in a nutshell, is that K.S.A. 21-4001 does not contain an exception governing law enforcement activities and that the third party consent of an informant cannot defeat defendant's privacy expectations under the statute. Thus, he concludes the informant's use of the bodypack transmitter inside his house constituted an "entry" violating 21-4001(1)(a), and the police officers' use of a receiver and recorder violated 21-4001(1)(b). The State's response is that the eavesdropping statute was not intended to cover the situation where an informer carries a transmitter into an otherwise "private place" or, if it does apply, the language excepts from coverage situations where one of the participants consents to transmittal of the conversation. The State also argues that the use of a wired informant is specifically provided for in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, codified in 18 U.S.C. § 2510-2520.

In order to properly construe the criminal eavesdropping statute, K.S.A. 21-4001, it is also necessary, in determining legislative intent, to review the other statutory enactments on the same subject, i.e., 21-4002 (criminal breach of privacy) and K.S.A. 22-2514 through 22-2519 (procedural eavesdropping statutes). *State v. Hruska,* 219 Kan. 233, 547 P.2d 732 (1976).

K.S.A. 21-4001 defines the crime of eavesdropping and K.S.A. 21-4002 defines the crime of breach of privacy. They provide, in pertinent part, as follows:

"21-4001. **Eavesdropping.** (1) Eavesdropping is knowingly and without lawful authority:

(a) Entering into a private place with intent to listen surreptitiously to private conversations or to observe the personal conduct of any other person or·persons therein; or

(b) Installing or using outside a private place any device for hearing, recording, amplifying, or broadcasting sounds originating in such place, which sounds would not ordinarily be audible or comprehensible outside, without the consent of the person or persons entitled to privacy therein;   .   .   .

. . . . .

"(2) A 'private place' within the meaning of this section is a place where one

may reasonably expect to be safe from uninvited intrusion or surveillance, but does not include a place to which the public has lawful access.

. . . .

"(4) Eavesdropping is a class A misdemeanor."

"21-4002. **Breach of privacy.** (1) Breach of privacy is knowingly and without lawful authority:

(a) Intercepting, without the consent of the sender or receiver, a message by telephone, telegraph, letter or other means of private communication; or

(b) Divulging, without the consent of the sender or receiver, the existence of contents of such message if such person knows that the message was illegally intercepted, or if he illegally learned of the message in the course of employment with an agency in transmitting it.

. . . .

"(3) Breach of privacy is a class A misdemeanor."

We have previously stated there is "no significant difference between [K.S.A.] 21-4001 and 21-4002 and their federal counterparts 18 U.S.C.A. 2511(2)(a) and 47 U.S.C.A. 605." *State v. Hruska*, 219 Kan. 233, 240. However, we have also recognized that Title III of the Omnibus Crime Control and Safe Streets Act of 1968 allowed for concurrent state regulation so long as the state enactment meets the minimum standards reflected in the federal regulation; thus, a state may adopt an electronic surveillance statute with standards more stringent than the requirements of the federal law, but not with standards more permissive than those set forth in Title III. In *State v. Farha*, 218 Kan. 394, 404, 544 P.2d 341 (1975), *cert. denied* 426 U.S. 949 (1976), we held invalid K.S.A. 1971 Supp. 22-2513(1) because the procedure for obtaining eavesdropping orders contained therein was more permissive than that authorized by the federal act. Defendant here contends the State's reliance on the federal act is unavailing because the Kansas electronic surveillance statutes, K.S.A. 21-4001 and 21-4002, were enacted prior to Title III and are more stringent than the federal act, thereby granting Kansas citizens a higher degree of freedom from electronic surveillance than is granted by Title III. Defendant also points to the comments of the 1968 Judicial Council following K.S.A. 21-4001 as evidence the legislature intended our act to be more stringent than that later provided under Title III.

Although the question presented in this appeal is a matter of first impression in this state, we have construed the Kansas eavesdropping statutes in prior decisions. In *State v. Wigley*, 210 Kan. 472, 502 P.2d 819 (1972), this court addressed the issue of whether a tape recording of a telephone conversation between

defendant and an informer, with the consent of the latter, violated those statutes. In the course of that decision we referred to the United States Supreme Court's approval of the use of a "wired" government informer. In *United States v. White,* 401 U.S. 745, 28 L.Ed.2d 453, 91 S.Ct. 1122 (1971), the court, in holding there was no violation of Fourth Amendment rights, said:

"Concededly a police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights. *Hoffa v. United States,* 385 U.S. [293], at 300-303 [17 L.Ed.2d 374, 87 S.Ct. 408 (1966)]. For constitutional purposes, no different result is required if the agent instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person, *Lopez v. United States,* [373 U.S. 427, 10 L.Ed.2d 462, 83 S.Ct. 1381 (1963)]; (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency. *On Lee v. United States,* [343 U.S. 747, 96 L.Ed. 1270, 72 S.Ct. 967 (1952)]. If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.

". . . An electronic recording will many times produce a more reliable rendition of what a defendant has said than will the unaided memory of a police agent. It may also be that with the recording in existence it is less likely that the informant will change his mind, less chance that threat or injury will suppress unfavorable evidence and less chance that cross-examination will confound the testimony. Considerations like these obviously do not favor the defendant, but we are not prepared to hold that a defendant who has no constitutional right to exclude the informer's unaided testimony nevertheless has a Fourth Amendment privilege against a more accurate version of the events in question.

". . . Our opinion is currently shared by Congress 'and the Executive Branch, Title III, Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 212, 18 U.S.C. § 2510 *et seq.* (1964 ed., Supp. V), and the American Bar Association, Project on Standards for Criminal Justice, Electronic Surveillance § 4.1 (Approved Draft 1971). It is also the result reached by prior cases in this Court. *On Lee, supra; Lopez v. United States, supra." White,* 401 U.S. at 751-53.

Both in *White* and *Wigley,* the courts reviewed Sections 4.1 and 4.2 of the American Bar Association Standards relating to Electronic Surveillance, supporting the use of these techniques by law enforcement officers for overhearing or recording wire or

oral communications with the consent of one of the parties. Based on the presence of the informer's consent, we concluded in *Wigley* there was no violation of K.S.A. 21-4002(1)(*a*) which enjoins only interceptions without the consent of *either* the sender *or* the receiver. 210 Kan. at 476.

We observed in *Wigley* that the exact statutory language adopted in our criminal eavesdropping statutes does not appear in either the Model Penal Code, the federal statute or the American Bar Association Standards. We also mentioned that the statutes of the various states pertaining to wiretapping or eavesdropping or breach of privacy vary with the specific statutory language adopted by each state legislature. For a general discussion and review of state and federal cases covering the subject of regulation of wiretapping and eavesdropping, see 97 A.L.R.2d 1283 and 27 A.L.R.4th 449. Although some of these sources, because of the similarity of language used, may be helpful in interpreting our own eavesdropping statutes, we are basically left to our own resources in construing the unique language used in the criminal eavesdropping statute now under challenge.

In construing criminal statutes, under our decisions we are required to place a strict construction on the language used therein. *State v. Mauldin,* 215 Kan. 956, 959-60, 529 P.2d 124 (1974). It is also the usual practice for courts to take into consideration other statutory enactments on the same subject which might shed light on the legislative intent. *Claflin v. Walsh,* 212 Kan. 1, 8, 509 P.2d 1130 (1973).

Did either the police officers or the informant violate any of the provisions of K.S.A. 21-4001(1)(*a*) or *(b)* quoted above? Under the provisions of 21-4001(1)(*a*) it is unlawful to knowingly and without lawful authority enter into a private place with intent to listen surreptitiously to private conversations.

It is conceded Brazzle did not enter defendant's home without lawful authority. He was there by direct invitation from defendant to purchase marijuana. Also, he did not listen surreptitiously to private conversations. This would imply Brazzle stealthily, secretly or furtively listened to defendant's conversation, which is absurd. Brazzle was an invited party to the conversation; in fact, the only party other than the defendant. The proscription set forth in K.S.A. 21-4001(1)(*a*) is clearly aimed at preventing an

unknown and uninvited presence in a private place, either personally or by electronic or photographic devices, to secretly listen to private conversations between other persons, or to furtively observe the personal conduct of such person or persons therein. We find no violation of K.S.A. 21-4001(1)(*a*) by informer Brazzle.

Likewise, we find no violation by the police officers in fitting Brazzle with a bodypack transmitter. The officers did not enter upon defendant's property nor did they secretly plant the transmitter within his home. Rather, the transmitter was taken into the defendant's home by an invited guest with the guest's knowledge and consent. The bodypack merely received and transmitted the conversation between Brazzle and the defendant. It gave the officers no more than Brazzle himself could have given without the bodypack, except a more accurate and reliable version of the conversation. We can find no language in K.S.A. 21-4001(1)(*a*) which prohibits the presence or use of an electronic transmitter by one of the parties to a private conversation. This construction is not only consistent with the specific language of the statute but also with the interpretation given by most federal and state courts when construing similar enactments:

"Where the interception [of oral communications] takes place with the co-operation, consent, or, as is the case with informers, the active participation of one of the parties to the conversation, there is little doubt as to its admissibility against the non-consenting party. Reasoning that the information could have been revealed by the co-operating party even without the interception, the courts uniformly hold the intercepted matter admissible. State statutes prohibiting the use of eavesdropping devices are usually held inapplicable in this situation and some authorities have even pointed out that eavesdropping, in its true sense, is not involved when the defendant engages the co-operating party in a face-to-face conversation." 91 A.L.R.2d 1283, 1289.

See also *Lopez v. United States*, 373 U.S. 427, 10 L.Ed.2d 462, 83 S.Ct. 1381, *reh. denied* 375 U.S. 870 (1963); 27 A.L.R.4th 449.

We next consider whether there was a violation of K.S.A. 21-4001(1)(*b*). It is a crime under K.S.A. 21-4001(1)(*b*) to install or use outside a private place any device for hearing, recording, amplifying or broadcasting sounds originating in such place "without the consent of the person or persons entitled to privacy therein." Compare this language with the provisions of K.S.A. 21-4002(1)(*a*) and (*b*), where it is a criminal breach of privacy to

intercept or divulge a message by telephone, telegraph, letter or other means of private communication "without the consent of the sender or receiver." It should be remembered that Brazzle consented to be fitted with a bodypack and consented to allow the officers to intercept, listen to, and record his private conversation with the defendant.

It is obvious to us that the legislature, by using the language "without the consent of the person or persons entitled to privacy therein" [K.S.A. 21-4001(1)(b)] and "without the consent of the sender or receiver" [K.S.A. 21-4002(1)(a) and (b)], intended that all parties to any "private conversation" must desire to be clothed with the protection of the statutes before there can be a violation thereof. In other words, any party to a private conversation may waive the right of privacy and the non-consenting party has no Fourth Amendment or statutory right to challenge that waiver. When one purports to engage in a private conversation the burden is upon him to make certain he has not misplaced his confidence in the person with whom he is communicating. If the legislature had intended to require the consent of all persons entitled to privacy under K.S.A. 21-4001(1)(b) or the consent of both the sender and the receiver under K.S.A. 21-4002(1)(a) and (b), it could have specifically so provided. Instead, it chose language that clearly indicates the protection provided under the statutes can be waived by either party to a private conversation.

The foregoing constructions placed on the eavesdropping and breach of privacy statutes are in conformity with our prior decisions in *State v. Jordan,* 220 Kan. 110, 551 P.2d 773 (1976), and *State v. Irving,* 231 Kan. 258, 644 P.2d 389 (1982). Although *Irving* involved an interpretation of K.S.A. 22-2514 *et seq.,* it is of interest in comparing the criminal and procedural eavesdropping statutes to determine legislative intent.

K.S.A. 22-2514(2) defines "oral communication" as follows:

"(2) 'Oral Communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."

K.S.A. 22-2515 requires an ex parte court order to intercept a wire or oral communication. If a court order is not obtained the intercepted communication cannot be received into evidence in any trial, hearing or other proceeding in or before any court. K.S.A. 22-2517.

Consistent with our foregoing conclusions, we hold that a face-to-face "private conversation" between a police informer and a suspect is not an "oral communication" as defined by K.S.A. 22-2514 and, thus, it is not necessary to obtain an ex parte court order to intercept such conversation if the informer knowingly consents to the interception. Under such circumstances, it cannot be said that a suspect can legally justify an expectation that such communication is not subject to interception.

Even if we were to hold the conversation between Brazzle and the defendant to be an "oral communication" under K.S.A. 22-2514, their recorded conversation could nevertheless have been received into evidence, either before the magistrate at the probable cause hearing or during trial. K.S.A. 22-2515(3) and (4) provide as follows:

"(3) Any investigative or law enforcement officer who, by any means authorized by this act or by chapter 119 or title 18 of the United States code, has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may use such contents to the extent such use is appropriate to the proper performance of his or her official duties.

"(4) Any person who has received, by any means authorized by this act or by chapter 119 of title 18 of the United States code or by a like statute of any other state, any information concerning a wire or oral communication, or evidence derived therefrom, intercepted in accordance with the provisions of this act, may disclose the contents of such communication or such derivative evidence while giving testimony under oath or affirmation in any criminal proceeding in any court, or before any grand jury, of this state or of the United States or of any other state."

In *State v. Irving* we observed that under the above subsections any information or evidence derived from a telephone conversation which was obtained by any means authorized by chapter 119 of title 18 of the United States Code is admissible in any criminal proceeding in Kansas. 231 Kan. at 264. 18 U.S.C. 2511(2)(c) and (d) specifically provide that it is not unlawful for either a person acting under color of law [2511(2)(c)] or a person not acting under color of law [2511(2)(d)] to intercept a wire or oral communication, where such person is a party to the communication or has received prior consent to the interception from one of the parties to the communication. We held in *Irving* that the taped communication between an informant and the defendant was admissible under both the federal wiretapping statute and the Kansas statute [K.S.A. 22-2515(3) and (4)] since the consenting informer was one of the parties to the telephone conversation and thus outside the prohibition of those statutes.

We fully recognize that our interpretation of K.S.A. 21-4001 may be contrary to a portion of the comments of the 1968 Judicial Council. There are, however, several other considerations which we feel justify the above conclusions: First, as stated in the Judicial Council comments, K.S.A. 21-4001 was patterned after the Model Penal Code, the official comments of which are in conformity with our conclusions; second, the comments following the text of a statute are not a part of the legislative enactment, but are extrinsic evidence to be used as an aid in construction *only* if the language of the statute is ambiguous (*State v. Bagemehl*, 213 Kan. 210, 213, 515 P.2d 1104 [1973]); lastly, a statute should never be given a construction that leads to uncertainty, injustice, or confusion, or that would lead to an absurd result (*State v. Howard*, 235 Kan. 236, 247, 679 P.2d 197 [1984]).

We conclude that neither the criminal eavesdropping statute (K.S.A. 21-4001[1][*a*] and [*b*]) nor the criminal breach of privacy statute (K.S.A. 21-4002[1][*a*] and [*b*]) are violated when a police informer engages in a "private conversation" with a suspect and consents to the electronic interception and recording of the conversation. Further, we hold that such conversation is not an "oral communication" as defined by K.S.A. 22-2514, requiring an ex parte court order if the informer knowingly consents to its interception.

The defendant's next point of claimed error is whether the procedures used in this "controlled buy" were sufficient to insure the reliability of an untested informant in order to establish probable cause under the Fourth Amendment to the United States Constitution. Defendant's argument is primarily aimed at the sufficiency of the search warrant affidavit with the electronic eavesdropping evidence removed. Having already determined that the intercepted conversation between the informant and the defendant was admissible in any court proceeding, we find no merit in defendant's alleged claim of error. It is no longer necessary for the State to prove the reliability or credibility of an informer to establish probable cause for the issuance of a search warrant. *Illinois v. Gates*, 462 U.S. _____, 76 L.Ed.2d 527, 103 S.Ct. 2317 (1983). We now recognize the "totality of the circumstances" approach adopted in *Gates* whereby the issuing magistrate is simply to make a practical,

common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Walter,* 234 Kan. 78, 670 P.2d 1354 (1983); *State v. Rose,* 8 Kan. App.2d 659, 665 P.2d 1111 (1983). Suffice it to say, there was abundant evidence before the magistrate to support his finding of probable cause. The officer's summary of the intercepted conversation between the informer and defendant not only supplied additional evidence on which to base a finding of probable cause but also established the credibility of the informant's knowledge of defendant's drug activity.

Defendant also challenges the police procedures used in making the controlled buy, arguing they were insufficient to guard against the possibility of the informant "planting" evidence because the police failed to search underneath the hood of Brazzle's car. Other states have dealt with the issue of the adequacy of controls used in drug buys and have concluded that the thoroughness of a search of an informant affects only the credibility and the weight to be given the testimony of this issue. *Spriggs v. State,* 511 P.2d 1139 (Okla. Crim. 1973); *People v. Blackburn,* 133 Ill. App. 2d 404, 273 N.E.2d 472 (1971). We believe this to be the proper rule, whether the testimony be that of the informant or the police officers. We further note in the instant case, as has been previously stated, that the informer's credibility was substantially verified through the intercepted conversation with defendant.

Defendant next claims that Officer Schmidt withheld critical evidence from the issuing magistrate when seeking the search warrant, which now requires suppression of the evidence seized thereunder. Defendant points out the following alleged omissions or misstatements occurring in the affidavit:

1. Investigator Schmidt failed to tell the magistrate the informant was under arrest when he and Schmidt had occasion to talk at the Wamego Police Department.
2. Investigator Schmidt failed to tell the magistrate the informant had agreed to cooperate with authorities in exchange for leniency in criminal charges or probation revocation proceedings.
3. Investigator Schmidt failed to tell the magistrate the phone

call between the informant and the defendant was not monitored by police.

4. Investigator Schmidt failed to tell the magistrate the defendant was in the business of selling farm products such as chickens and eggs.

5. Investigator Schmidt failed to tell the magistrate certain things the defendant told the informant, as revealed by the transcription of the bodypack recording.

6. Investigator Schmidt failed to tell the magistrate no search was made of the engine compartment of the informant's car as part of the controls imposed.

7. Investigator Schmidt incorrectly stated the conversation between the defendant and the informant concerning the price of marijuana.

In *State v. Jacques*, 225 Kan. 38, 43, 587 P.2d 861 (1978), we followed *Franks v. Delaware*, 438 U.S. 154, 57 L.Ed.2d 667, 98 S.Ct. 2674 (1978), and held that knowingly false statements or statements made with reckless disregard for the truth must be exercised from a warrant affidavit, and if the remaining content is insufficient to establish probable cause the warrant must be voided and the fruits of the search excluded. However, we also recognized that the burden of proof is upon a defendant raising the issue, and where his claim of deliberate falsity or reckless disregard on the part of the governmental affiant is merely conclusory, no hearing on the claim is required. 225 Kan. at 44.

We expanded the *Franks/Jacques* rule in *State v. Lockett*, 232 Kan. 317, 654 P.2d 433 (1982):

"Obviously the *Jacques* case applied only to false statements contained in an affidavit for search warrant. However, a deliberate omission os often equal to an actual misstatement. Thus, the *Jacques* and *Franks* rules can easily apply to a case where a person claims authorities deliberately omitted material information from a search warrant.

"*Jacques* requires that the person attacking the affidavit show two things: (1) the omission was deliberate and (2) the omission was material." 232 Kan. at 319.

Finally, we have held that the question for our appellate court on review is whether the trial court's findings on the issue of deliberate falsity and reckless disregard are supported by "substantial evidence," in which case they may not be disturbed. *State v. Walter*, 234 Kan. 78, 670 P.2d 1354 (1983). The same review criteria would apply to a deliberate and material omission.

In denying defendant's post-trial motion to excise, the trial court held:

"I am of the opinion and find that there was no material statement of falsehood or reckless disregard for the truth in seeking to obtain that search warrant, and I further find that there were no deliberate omissions of any material fact by the officers in seeking that search warrant."

We have reviewed the record below and find substantial competent evidence to support the trial court's finding.

Finally, defendant claims the charges of sale of marijuana and possession of marijuana with intent to sell were multiplicitous.

Multiplicity involves the charging of a single offense in several counts. *State v. Dorsey,* 224 Kan. 152, Syl. ¶ 6, 578 P.2d 261 (1978). The principle behind the prohibition against multiplicity is that the State may not split a single offense into separate parts because a single wrongful act will not furnish the basis for more than one criminal prosecution. *State v. Lassley,* 218 Kan. 758, 761, 545 P.2d 383 (1976). The general principles for determining whether charges are multiplicitous were set out in *State v. Garnes,* 229 Kan. 368, 373, 624 P.2d 448 (1981):

"(1) A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution.
 *Example:* Where an aggravated assault or aggravated battery directly results in a homicide, the offenses become merged. See *State v. Clark,* 204 Kan. 38, 44, 460 P.2d 586 (1969).
 (2) If each offense charged requires proof of a fact not required in proving the other, the offenses do not merge.
 *Example:* The essence of aggravated robbery is to deprive a person of property, an element not found in homicide. Though a homicide is committed in the course of an aggravated robbery, the offenses do not merge. *State v. Rueckert,* 221 Kan. 727, 733, 561 P.2d 850 (1977). Similarly, federal bank robbery does not merge with State charges of aggravated robbery (of an individual), aggravated kidnapping, and kidnapping. See *State v. Smith & Miller,* 224 Kan. 662, 669-670, 585 P.2d 1006 (1978), *modified on rehearing,* 225 Kan. 199, 588 P.2d 953, *cert. denied* 441 U.S. 964 (1979).
 (3) Where offenses are committed separately and severally, at different times and at different places, they cannot be said to arise out of a single wrongful act.
 *Example:* An assault and battery, following which the victim broke away, does not merge with and is distinct from forcible rape, which occurred at a later time and at a different place. See *State v. James,* 216 Kan. 235, 531 P.2d 70 (1975)."

We have held, applying earlier versions of the above principles, that the State may not charge a defendant with both pos-

session of marijuana with intent to sell, and sale of marijuana, where the same quantity of marijuana underlies both charges. *State v. Thornton,* 224 Kan. 127, 130-131, 577 P.2d 1190 (1978). There we held, because the same marijuana was at issue in both counts, that the "intent to sell merged into the crime of sale when the sale was consummated." 224 Kan. at 131.

Applying the *Garnes* principles to the present factual situation, however, leads us to an opposite conclusion than that found in *Thornton* because the two counts do not involve the same marijuana. Defendant's sale of one ounce of marijuana during the evening hours of October 1 is not the same offense as his continued possession of the remaining inventory found in the early morning hours of October 2. The two offenses do not merge since each requires proof of a fact not required in proving the other, *i.e.,* a consummated sale, and possession of the remainder with intent to sell in the future. Although both offenses occurred inside defendant's home, they were committed "separately and severally"; the two charges were not multiplicitous insofar as they concerned distinct activities, occurring at different times and arising out of separate contraband.

The judgment of the lower court is affirmed.

HOLMES, J., not participating.