The Honorable Clyde D. Graeber State Treasurer 900 Jackson, Suite 201 Topeka, Kansas 66612
Dear Mr. Graeber:
As State Treasurer you request our opinion on whether the Director of Investments of the Pooled Money Investment Board ("PMIB") is authorized to invest eligible state moneys in tri-party repurchase agreements under K.S.A. 75-4209 and any rules or regulations governing these investments.
 Background
All moneys in the state treasury (with one exception) are to be invested as a single portfolio[1] by the Director of Investments of the PMIB "in accordance with investment policies provided by law, by rules and regulations and published policies of the [PMIB]."[2] Among the listed investments, the Director is authorized to invest eligible State moneys in repurchase agreements with qualified banks or securities dealers.[3] A repurchase agreement is a transaction between the State as buyer/lender and a qualified securities dealer as seller/borrower: the State transfers cash to the securities dealer; the dealer transfers securities to the State and agrees to repay the State's cash, plus interest, in exchange for return or "re-purchase" of the same securities.[4] (The Governmental Accounting Standards Board's [GASB] has addressed financial reporting on repurchase agreements so risk of loss may be better assessed.)[5] The State realizes a return on its investment of excess cash when the securities are repurchased.[6]
According to Peggy Hanna, Assistant State Treasurer, the Director of Investments currently invests State moneys in repurchase agreements through a book-entry system. The State's cash passes through UMB Bank and the underlying securities are electronically transferred to the State Treasurer's account with the Federal Reserve Bank in Kansas City, where they remain on the books until repurchased. This is termed a book-entry system because the cash and security transfers are made as accounting entries and not through physical movement.[7] In a tri-party repurchase agreement a custodial bank is added as a third party to the transaction.[8] The custodial bank acts as agent to both parties, safeguards the security before the securities dealer's repurchase and agrees to protect the interests of one party in the event of default by the other.[9] Your question is whether the State investment laws permit the participation of this custodial bank.
 Kansas Law
The Director of Investments may invest in:
 "Repurchase agreements with a bank or a primary government securities dealer which reports to the market reports division of the federal reserve bank of New York for direct obligations of, or obligations that are insured as to principal and interest by, the United States government or any agency thereof and obligations and securities of United States government sponsored enterprises which under federal law may be accepted as security for public funds."[10]
The State investment statutes make no other reference to, nor place any limitations on, repurchase agreements.[11] The Director of Investments is, however, bound to the prudent person standard in making all investments.[12] The PMIB may use only depository banks which are incorporated in Kansas or have a main or branch office in Kansas.[13]
Accordingly, the PMIB's policy on tri-party repurchase agreements must contain a standing order to any out-of-state custodial bank to "zero out Kansas' account" whenever cash is received for the repurchase of securities. We will assume for purposes of this opinion that this order will be in effect if the PMIB invests in tri-party repurchase agreements.
The PMIB has promulgated regulations governing repurchase agreements. K.A.R. 122-3-7 directs that all repurchase agreements be conducted on a "delivery vs. payment" basis, which requires securities to be held by the State Treasurer or the Treasurer's designated custodian.[14]
Consequently, if Kansas statutes permit investment in tri-party repurchase agreements this regulation must be repealed in order for the PMIB to make such investments; therefore this opinion will not discuss the effect of K.A.R. 122-3-7 or 122-1-1 (the definition of delivery vs. payment) on your inquiry except as set forth below in the analysis of the municipal investment statutes.
Parallel to the state investment law is the statute authorizingmunicipal investments.[15] Repurchase agreements are likewise an authorized municipal investment, but the 1992 Legislature added the supplementary requirement to K.S.A. 12-1675 that all securities transactions occur on a "delivery vs. payment" basis (similar to K.A.R.122-3-7) and K.S.A. 12-1675(e)(2) designates the potential custodians. Former State Treasurer Sally Thompson testified in 1992 that this method of delivery would provide the investor with maximum security and protection and would offer the customer an additional "safeguard" and "control" for all securities investments, including repurchase agreements.[16] The municipal statute was amended in 1994 to explicitly include repurchase agreements as one type of security subject to "delivery vs. payment."[17] The amendment codified Attorney General Opinion No. 94-14 which concluded that "delivery vs. payment" ensures the security is actually delivered to the municipality entering into a repurchase agreement. By contrast, the state moneys investment statute was enacted in 1967 and has been amended in ten legislative sessions since its passage, including in 1994, but we have found no similar legislative testimony or language directing the "delivery vs. payment" method for state repurchase agreement investments.
 Other Applicable Laws and Policies
GASB pronouncements generally apply to financial reports of all state and local governments.[18] The GASB classifies repurchase agreements based on credit risk factors which are weighed according to the identity of the custodian.[19] A tri-party repurchase agreement in which the independent custodial bank acts as agent to both parties and the State is a party to the tri-party agreement is classified in the lowest risk category. The distinction between repurchase agreements and tri-party repurchase agreements is made by reference to risk factors and not to the substance of the transaction.[20]
The Bankruptcy Code defines "repurchase agreement" as an agreement which provides for the transfer of certain securities at a specified date not later than one year after the transfer, or on demand, against the transfer of funds.[21] A repurchase agreement must meet the Code definition to avoid automatic stay provisions and to provide the State with immediate access to the securities if the dealer files bankruptcy.[22] Whether the State may immediately liquidate the securities depends on the terms of the repurchase agreement meeting the Code definitions, not on the securities custodian's identity.[23]
The FDIC has addressed repurchase agreements in regulations, policies and letters. FDIC regulations on banks holding government securities for customer accounts include provisions that the security be segregated and be kept free from third party liens or claims and that a safekeeping receipt be issued to the customer for the security.[24] The FDIC has interpreted this regulation as applying to third party custodians in tri-party repurchase agreements.[25] FDIC Commissioner Gregg defined tri-party repurchase agreements as a transaction with an independent institution entering into a tri-party agreement with the two counter parties to the agreement.[26] The third party custodian assumes certain duties in safeguarding both parties' interests and effects the transfer of funds and securities between the two parties.[27] In a policy statement on minimizing risk in repurchase agreement transactions, the FDIC recommended that all tri-partite agreements ensure adequate segregation and identification of securities.[28] Again, introducing a third party custodian to a repurchase agreement transaction alters only the risk and controls analysis, the transaction remains fundamentally a repurchase agreement.[29]
Lastly, the Uniform Commercial Code sets out responsibilities for a "securities intermediary" which includes a bank that maintains security accounts for others.[30] The PMIB submitted to us a draft of a "Custodial Undertaking in Connection with Master Repurchase Agreement" which named The Bank of New York as the custodial bank in any future tri-party repurchase agreements. New York's U.C.C. laws on securities intermediaries can be found at U.C.C. § 8-102 et seq. and regulate the securities custodians' obligations toward the security and the counterparties.
 Analysis
As stated in Attorney General Opinion No. 94-14, which construed the municipal investments statute, where a statute contains no ambiguity we must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. In that opinion we examined the sections of K.S.A. 12-1675 which directed repurchase agreements to be made on a delivery vs. payment basis and specified the custodian. It was the plain language of these sections, we concluded, that required "the actual delivery of the security to the municipality in order to execute a repurchase agreement."[31] To read the same restrictions into K.S.A. 75-4209, without similar language, is contrary to the Attorney General opinion, and renders K.S.A. 12-1675(e)(1) and (2) surplusage and a "futile legislative act."[32] "It is necessary, in determining legislative intent, to review the other statutory enactments on the same subject."[33] The two cited statutes govern the same subject; because one has express restrictions that the other does not, the tenets of statutory construction prohibit us from placing securities restrictions on state investments that are statutorily required for municipal investments
A second rule of statutory construction is that technical words and phrases "that have acquired a peculiar and appropriate meaning in law, shall be construed according to their peculiar and appropriate meaning."[34] The GASB, the FDIC, the Bankruptcy Code and PMIB and the Kansas Legislature, in perceiving a need to specify "delivery vs. payment," have all interpreted tri-party repurchase agreements as a subset or category of repurchase agreements to which all repurchase agreement laws apply. The identity of the custodian does not create a distinct legal transaction; rather the identity of the custodian to a repurchase agreement determines the degree of risk to the buyer (State). This common usage by various entities confers a broad meaning on the term "repurchase agreement," which is defined by reference to the essential terms between its two counterparties.
 Conclusion
It is our opinion that K.S.A. 75-4209 permits the Director of Investments to invest in tri-party repurchase agreements if: (1) K.A.R.122-3-7 is repealed, (2) the Director determines these are a prudent investment under K.S.A. 75-4209(f), and (3) the custodial bank does not act as a depository bank where it is not organized under Kansas law and does not have a main or branch office in Kansas.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Nancy L. Ulrich Assistant Attorney General
CJS:JLM:NLU:jm
[1] K.S.A. 75-4234(a).
[2] K.S.A. 75-4232.
[3] K.S.A. 75-4209(a)(2).
[4] Deposits with Financial Institutions, Investments (includingRepurchase Agreements), and Reverse Repurchase Agreements, Statement No.3 of the Governmental Accounting Standards Board, at 46 (1986).
[5] Guide to Implementation of GASB Statement 3 on Deposits andFinancial Institutions, Investments (Including Repurchase Agreements),and Reverse Repurchase Agreements, Governmental Accounting StandardsBoard, Questions and Answers (1991).
[6] Attorney General Opinion No. 94-14.
[7] Deposits with Financial Institutions, supra note 4 at 6.
[8] Guide to Implementation of GASB, supra note 5 at 54.
[9] Id.
[10] K.S.A. 75-4209(a)(2).
[11] K.S.A. 75-4201, et seq.
[12] K.S.A. 75-4209(f).
[13] K.S.A. 75-4201(d); 75-4205; K.A.R. 122-2-1.
[14] Attorney General Opinion No. 94-14.
[15] K.S.A. 12-1675.
[16] Minutes, Committee on Financial Institutions and Insurance, February 4, 1992, attachment 2-6.
[17] Minutes, Senate Committee on Financial Institutions and Insurance, February 17, 1994, attachment 1.
[18] Deposits with Financial Institutions, supra note 4.
[19] Id.
[20] Guide to Implementation of GASB, supra note 5 at 3.
[21] 11 U.S.C. § 101(47).
[22] Deposits with Financial Institutions, supra note 4 at 13,14.
[23] Id. at 13.
[24] 17 C.F.R. § 450.4(a)(1) and (b).
[25] Letter of Commissioner Richard L Gregg, May 7, 1990, "Distinctions Between `Tri-Party' and `Hold-in Custody' Repurchase Transactions."
[26] Id.
[27] Id.
[28] FDIC Statements of Policy, December 31, 1985, "Repurchase Agreements of Depository Institutions with Securities Dealers and Others," at 5265.
[29] Id.
[30] Article 8, Uniform Commercial Code.
[31] Attorney General Opinion No. 94-14.
[32] American Fidelity Ins. Co. v. Employers Mut. Cas. Co.,3 Kan. App. 245, 249 (1979).
[33] State v. Roudybush, 235 Kan. 834, 839 (1984).
[34] K.S.A. 77-201 Second.